KATHARINE FOWLER BILLINGS *vs.* WILLIAM PLUMER FOWLER & others.

Essex.   December 10, 1971. — February 25, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Adoption.   Devise and Legacy*, Adopted child, Vested right.   *Words,* "Vested."

Under G. L. c. 231A, declaratory relief was permissible where a dispute existed among parties concerning the proper interpretation of a will in the light of subsequent statutory provisions, and a party asserted "immediate estate planning problems," even though no direct, immediate interest was affected. [233-234]

The proviso in St. 1969, c. 27, § 2, referring to "vested" interests or rights cannot fairly be viewed as adopting technical concepts whether an interest is vested or contingent, but contemplates appraisal whether, in substance, the interest is sufficiently established to constitute an interest or right which had accrued to its holder. [239-241]

Interest in a trust established under a 1923 will, although subject to total or partial defeat by certain events, were "vested" within the proviso in St. 1969, c. 27, § 2, prior to the effective date of c. 27, and, as against such interests, the provisio precluded G. L. c. 210, § 8, as appearing in St. 1969, c. 27, § 1, from conferring rights in the trust on an adopted child of a child of the testatrix. [241-242]

---

PETITION filed in the Probate Court for the county of Essex on November 17, 1970.

The case was reported by *Costello, J.*

*H. Burton Powers* (*Harley M. Smith* with him) for Katharine F. Billings.

*William P. Fowler,* pro se.

*Paul B. Sargent,* guardian ad litem, pro se.

*John E. Rogerson* (*Neil R. Markson* with him) for Richard Fowler & others.

*Charles Y. Wadsworth & Timothy Dacey, III,* for Charles Y. Wadsworth, guardian ad litem, submitted a brief.

CUTTER, J. Mrs. Billings, by equity petition in the Probate Court, seeks declaratory relief concerning possible interests of her adopted daughter, Betty Jean Neilsen, in the residuary trust under the will of Mrs. Billings's mother, Susan Farnham Fowler (the testatrix), late of North Andover, who died February 16, 1928. Numerous possible beneficiaries under the will are named as parties. A separate guardian ad litem has been appointed for (a) a group of interested minors and other persons not now ascertained or in being who may become interested in the trust estate, and (b) for persons not ascertained or not in being who may become interested by reason of later adoption. A judge of the Probate Court, without decision, has reported the case on the pleadings and a statement of agreed facts [1] for the determination of this court.

The testatrix at her death in 1928 left a will dated February 8, 1923, and a codicil dated May 13, 1927. She was survived by three children, Mrs. Billings, Mr. William Plumer Fowler, and Philip Fowler. Mrs. Billings has two children, one (Mrs. Neilsen) adopted in 1941 and one

---

[1] The statement of agreed facts recites only that Mrs. Billings and her husband were "Massachusetts domiciliaries" at the time of the adoption of Mrs. Neilsen. In his report of the case, the judge asked several specific questions the nature of which is sufficiently indicated by our answers which appear in the next to the last paragraph of this opinion.

son (George) born in lawful wedlock in 1939 to her and her husband. Neither George nor Mrs. Neilsen has issue. Although the record does not clearly show this to be the case, we assume to be true representations in various briefs that Mrs. Billings's brother, Mr. William Fowler, has three children and six grandchildren, all apparently born prior to September 1, 1969. Her brother, Philip, has no children.

By art. 6 of her will, the testatrix gave the residue of her property to trustees to hold upon trusts as follows: "C. To pay the . . . net income . . . as follows: (1) To my children, and to the issue of any deceased child of mine by right of representation . . . during the natural lives of the survivors and survivor of my children and twenty-one years . . . thereafter. (2) If my daughter Katharine shall die without leaving issue living, or if either of my sons shall die without leaving a widow or issue living, to pay over the share of my deceased daughter or the share of such deceased son in . . . net income to the survivors and survivor of my children; and to the issue of any deceased child of mine, by right of representation . . . during the . . . life of the survivor of my children and twenty-one years next thereafter. . . . [Then follows subpar. (3) making provision for the widow of a deceased son, in detail which need not be reproduced here.] (4) If any of my children shall die leaving issue living and all of said issue shall die before the death of the survivor of my children or before the end of twenty-one years next [there]after . . . to pay over the share of said deceased issue in said entire net income to the survivors and survivor of my children and to the issue of any deceased child by right of representation . . . during the life of the survivor of my children and twenty-one years next thereafter." [2]

---

[2] Then follows a provision to take effect in case all the testatrix's children are dead, and if all their issue of any generation die before the end of the trust and there is then still living a widow of either of the testatrix's sons. This provision contains a partial gift over of shares in the trust income to the testatrix's two sisters and their issue, to be effective during the balance of the trust.

The trustees are then directed, "D. At the end of twenty-one years next after the death of the survivor of my children, to . . . [distribute the trust estate] to the children of my children then living, and to the issue of any deceased child of any of my children by right of representation . . . it being my intention that my grandchildren shall share equally in the [t]rust [e]state herein created, but that the issue of any deceased grandchild of mine shall take by right of representation: [subject to a provision, which need not be set out, for any then living widow of the testatrix's sons] . . . . If, at any time prior to . . . twenty-one years next after the death of the last survivor of my children, all issue of my children and all issue of any child of my children shall have died, and the widow or widows of my son or sons shall also have died ·or remarried, then . . . the Trustee . . . shall convey and distribute the entire principal and undistributed income of this Trust Estate . . . to my said sisters or to the issue of my said sisters, if deceased, by right of representation . . . ."

,1. At the outset arises the procedural question whether declaratory relief is permissible under G. L. c. 231A (inserted by St. 1945, c. 582, § 1). The petition alleges that controversies have arisen with respect to interests created under a will executed in 1923, which was admitted to probate in 1928 at the testatrix's death. The extended printed briefs filed in this court attest to the fact that there is an intense dispute among the parties concerning the proper interpretation of the testatrix's 1923 will, in the light of various later statutory provisions. This controversy may have an important bearing upon prudent present action by one or more of the parties. For example, Mrs. Billings asserts that she "has immediate estate planning problems dependent upon whether . . . her adopted daughter is a beneficiary under" the testatrix's will.

We are of opinion that, under c. 231A, §§ 1, 2, instructions concerning the meaning of a will may be obtained even though no direct, immediate interest of a present

life beneficiary will be affected. Chapter 231A (see Twentieth Report of the Judicial Council [December, 1944], Pub. Doc. No. 144, pp. 15–21) was intended to expand, at least in the discretion of the court, prior provisions for the interpretation of written instruments. Mrs. Billings's estate planning interest is sufficient to permit declaratory relief, particularly in view of c. 231A, § 9, requiring that the chapter be "liberally construed," so as "to remove, and to afford relief from, uncertainty . . . with respect to rights." We have exercised the authority to grant such relief. *Copp* v. *Worcester County Natl. Bank,* 347 Mass. 548, 551–552. See *Old Colony Trust Co.* v. *Silliman,* 352 Mass. 6, 9–11; *Old Colony Trust Co.* v. *Board of Governors of Belleville Gen. Hosp.* 355 Mass. 776, 779–781. See also *Nissenberg* v. *Felleman,* 339 Mass. 717, 724–726; *Commissioner of Admn.* v. *Kelley,* 350 Mass. 501, 504–506; *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 87–89. The tendency of this court has been to apply § 9 broadly. Cases (see, e.g. *Boston Safe Deposit & Trust Co.* v. *Northey,* 332 Mass. 110, 114) arising upon traditional petitions for instructions, rather than under c. 231A, are not to be regarded as necessarily precluding declaratory relief, although substantial discretion is given by c. 231A to deny relief in appropriate cases.

2. The present controversies arise by reason of St. 1969, c. 27, the pertinent provisions of which are quoted in the margin.[3] That statute, approved February 25,

---

[3] Section 1 of the 1969 act substituted a new section for G. L. c. 210, § 8, as amended by St. 1958, c. 121, § 1, as follows: "*Section 8.* The words 'child', 'grandchild', 'issue', 'heir' or 'heir-at-law', or their respective equivalents, in a . . . devise or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock, whether the adoption was decreed before or after the date of execution or the effective date of any such . . . devise or bequest, unless the contrary plainly appears by the terms of the instrument." Section 2 of the 1969 act provides: "The provisions of . . . [G. L. c. 210, § 8] as amended by section one of this act, shall be applicable to all . . . devises or bequests whether the same were executed or effective before or after the effective date of this act providing that said provisions shall not apply to any such . . . devise or bequest which was executed or effective prior to . . . [August 26, 1958] with respect *to any interests or right therein which had vested prior to the effective date of this act*" (emphasis supplied).

1969, was (by § 3) made effective on September 1, 1969. The question for decision, of course, is whether Mrs. Billings's adopted daughter, Mrs. Neilsen, is one of the "issue" or a "grandchild" of the testatrix, or a "child" of Mrs. Billings within the meaning of such terms (and similar terms) used in the testatrix's 1923 will.

The decision of this case requires some discussion of earlier statutes leading up to St. 1969, c. 27 (fn. 3). For convenience these are set out in chronological order in Appendix A at the end of this opinion. It will be observed that there have been significant variations of substance, for more than 120 years, in the policy of the Commonwealth with respect to the rights of inheritance of adopted children and to the interpretation of wills under which adopted children may take an interest. Many of these statutes have recently been discussed in *Boston Safe Deposit & Trust Co.* v. *Fleming, ante,* 172. This makes possible in this opinion a less comprehensive review of the statutory changes than might otherwise be necessary.

3. Three examples of situations which arise under the testatrix's 1923 will illustrate the present controversy. (1) Under art. 6 C (2), if Mrs. Billings should "die without leaving issue living" her share in the income of the residuary trust would go "to the survivors and survivor of my children; and to the issue of any deceased child of mine, by right of representation." If Mrs. Billings's son (born in lawful wedlock) should predecease her, would Mrs. Neilsen, the adopted daughter, be treated as "issue" of Mrs. Billings? (2) A similar problem arises under art. 6 C (4), quoted earlier. (3) At the expiration of the trust under art. 6 D, the trust corpus is to go "to the children of my children then living, and to the issue of any deceased child of any of my children by right of representation . . . share and share alike, it being my intention that my grandchildren shall share equally in the" trust corpus, "but that the issue of any deceased grandchild of mine shall take by right of representation." Is Mrs. Neilsen, if then alive, to be included

as a grandchild of the testatrix, taking per capita under art. 6 D? If she is so to be included, the size of the share of each other then living grandchild, of course, will be reduced.

4. Prior to the effective date of St. 1958, c. 121 (see Appendix A, par. 5), the prevailing rule was found in G. L. c. 210, § 8, as it had stood, essentially unchanged since 1876, and had been uniformly applied by this court. See *Boston Safe Deposit & Trust Co.* v. *Fleming, ante,* 172, 178. That rule interpreted the word "child" or its equivalent, where the testator was "not himself the adopting parent," as excluding an adopted child, "unless it plainly appears to have been the [testator's] intention . . . to include" such an adopted child. The rule was completely reversed by the 1958 statute (Appendix A, par. 5) but, by § 2 of that statute, the change was "applicable only to . . . devises or bequests executed after [August 26, 1958] the effective date" of that statute.

The 1969 statute (fn. 3) broadened the rule laid down in the 1958 statute and (by § 2) made the 1969 rule applicable to "devises or bequests whether . . . executed or effective before or after the effective date of" the 1969 statute, subject to the proviso that the 1969 rule (emphasis supplied) "shall not apply to any . . . devise or be-. quest . . . executed or effective prior to . . . [August 26, 1958] with respect to *any interests or right therein which had vested prior to the effective date of*" the 1969 act. Apart from constitutional considerations, determination of the present case rests on the italicized language of the proviso just quoted.

5. We perceive nothing in the testatrix's will indicating an affirmative intention that adopted children be included or excluded as beneficiaries, beyond the testatrix's general use of terms commonly applied to biological issue, such as "children," and "grandchildren." In 1923, G. L. c. 210, § 8, unamended, was in force. See Appendix A, par. 4.

6. The proviso in St. 1969, c. 27, § 2 (fn. 3), follows very closely the language of the proviso in St. 1876,

c. 213, § 9 (Appendix A, par. 3), as is shown in the parallel columns in the margin.[4]   Prior to the 1876 statute, an adopted child (see St. 1851, c. 324, § 6; Appendix A, par. 1) was deemed for all "purposes of inheritance and succession" to have the same rights "to all intents and purposes as if such child had been born in lawful wedlock" to his adopting parent or parents.[5]   In 1880, shortly after the 1876 statute, Judge Lowell (of the Federal Circuit Court, District of Massachusetts) discussed the effect of the proviso in the 1876 statute.   *Tirrell* v. *Bacon*, 3 Fed. 62 (D. Mass.).   The opinion provides a helpful and close precedent.

In the *Tirrell* case, the testator made his will in 1846 and died in 1857.   He left the residue of his estate to trustees in trust (p. 63) to pay the income to his wife for life, and at her death to his children in equal shares during their lives, respectively.   At the death of each child the trustees were to distribute each child's share "to his or her child or children then living, in equal shares, and to the lawful issue then living of any deceased child of such child; and in default of any such child, children, or issue then living; to the testator's heirs at law."   One child of the testator enjoyed his share of the trust income until 1879, when he died, leaving no children, unless the court was bound to treat as a "child" Willie K. Tirrell, adopted in Massachusetts in 1874, two years prior to the 1876 statute.   The judge (at p. 64) referred to the proviso in the 1876 statute and pointed out that the gift to

---

[4] A comparison of the two statutes is as follows (emphasis supplied):
*1876 Statute* "*provided, however,* that nothing in this act shall be construed to restrict *any right to the succession to property which may have vested* in any person already adopted in accordance with the laws of this Commonwealth."
*1969 Statute* "provided that said provisions shall not apply to any such . . . devise or bequest which was executed or effective prior to . . . [August 26, 1958] with respect to *any interests or right therein which had vested* prior to the effective date of this act."

[5] There were exceptions, not here material, of property limited to "the heirs of the body" of the adopting parent and of gifts which accrued to the recipient by right of representation. See St. 1871, c. 310, § 8 (Appendix A, *infra,* par. 2).

Willie "would be contingent on . . . [his] survival" of his adoptive parent. He viewed the interest (if Willie had one) as a "vested remainder, which opens to let in after-born children." He concluded that Willie's remainder was "a valuable interest which he owned in 1876" when the statute was passed. The judge went on to say (p. 65) : "The name which we may give to this interest of Willie . . . is not important, because, in my opinion, the proviso of the statute preserved all interests. It does not say that vested remainders shall be preserved, and contingent remainders destroyed; the word 'vested,' in the proviso, qualifies 'right' and not 'property,' and declares that a right of succession vested in any person at the date of the act shall not be restricted, not that property or estate which is vested shall not be taken away. The 'vested rights' which it preserves are *all existing rights.* This is the meaning which that phrase bears in ordinary use in this country, though it has not acquired a technical meaning. It is not to be supposed that the law intended to destroy all contingent remainders and executory devises, and to preserve vested remainders alone. Such nicety of construction is not reasonable" (emphasis supplied).[6]

The *Tirrell* case properly did not make the application of the 1876 proviso depend on whether Willie's interest was vested (as opposed to contingent) in the traditional property sense (or for purposes of the rule against perpetuities) but on the more fundamental basis of whether Willie had acquired prior to the 1876 statute a valuable interest, even if contingent or subject to defeasance in some respect, which was so substantial and valuable as to constitute "property," and of which (at least to avoid

[6] The opinion then proceeded, "Were it not for this proviso a court would say, without hesitation, that the statute of 1876 was to be applied only to deeds and wills taking effect after its passage. . . . I doubt whether the proviso means more than that future settlements, though they should concern children already adopted, should be governed by it. Without it there might have been an argument, from the general scope of the act, that it had no application in any case to children who had been adopted before its date."

constitutional doubts) the Legislature by the 1876 pro-
viso had carefully avoided depriving him.   The case is
the most direct and pertinent precedent in solving the
present problem of interpreting the 1969 proviso.

Counsel for Mrs. Billings now contend that the only
interests which the 1969 proviso was meant to preserve
were an "immediate right in an ascertained person in
present possession and enjoyment, or a presently fixed
right of future enjoyment in an ascertained person."
The contention states the principle adopted by a three to
two majority of the Rhode Island court in *Prince* v. *Nu-
gent,* 93 R. I. 149, 160, 162–163, as an interpretation of
a somewhat comparable statute with a proviso which
reads "unless the particular estate so limited shall have
vested in and as to the person or persons entitled thereto
on May 8, 1956." [7]   Only such interests, it is now argued,
are entitled to constitutional protection because any lesser
interest constitutes merely an "expectation."

The contention just outlined not only disregards the
precise holding in *Tirrell* v. *Bacon,* with respect to an in-
terest vested in right with contingent aspects, but it
overlooks the circumstances that the proviso refers (em-
phasis supplied) to *"any* interests or right therein which
had vested."   This language, more comprehensive than
the Rhode Island language already mentioned, broadly
suggests that the same considerations apply at least to all
substantial present or future interests in ascertained
persons, which in normal course can be affected only by
failure of the person holding the interest to survive to a
given time or event mentioned in the instrument, or by
natural augmentation or reduction of the membership in
a class, or by similar developments.   We accept the view
of the *Tirrell* case (p. 65) that the name given to such

---

[7] The Rhode Island opinion (p. 161) treats the provision of the
statute there construed as a rule of construction and not a rule of
substantive law. It said (p. 165) that the rule "is merely a rule of
evidence concerned with the burden of proof" and "relates only to the
policy and demands of the law concerning proof at the time of con-
struction."

an interest "is not important, because . . . the proviso"
is designed to preserve "all interests," at least those of
essentially equivalent significance, substance, and value [8]
to the interest there considered.   We think the proviso in
§ 2 of the 1969 statute cannot fairly be viewed as adopt-
ing technical concepts whether an interest is vested or
contingent (see, e.g. the technical considerations neces-
sarily considered in *DeFord* v. *Coleman,* 348 Mass. 299,
301–305), but contemplates appraisal whether, in sub-
stance, the interest is sufficiently established to constitute
an interest or right which had accrued to its holder.   The
matter, in our opinion, is not to be decided on the basis
of subtleties of differentiation among interests (in sub-
stance essentially similar), on occasion classified or de-
scribed, as Mrs. Billings's brief suggests, as "vested sub-
ject to being divested upon birth of other members of the
class," or "vested subject to being divested upon prede-
ceasing the life tenant," or a "vested interest in a con-
tingent remainder," or a "contingent interest in a vested
remainder," or a "vested interest subject to a condition
subsequent," or a "contingent interest subject to a condi-
tion precedent," or "vested in interest," or "vested in
possession."   Other similar language has been used to
describe interests very much the same.   As was pointed
out in *Young* v. *Tudor,* 323 Mass. 508, 511, "The inter-
ests of persons having contingent interests may be vastly
greater than those of persons having vested interests.

[8] In the briefs of the parties, some emphasis has been placed on
whether a particular interest is assignable or transmissible.   See
*National Shawmut Bank* v. *Joy,* 315 Mass. 457, 467.   The briefs sug-
gest that this factor may be controlling.   This attribute of a property
interest under a will, doubtless, is an indication of its substantial
character.   A spendthrift clause (such as that found in art. 7 of the
testatrix's will) may affect the *exercise* of a power to transmit but it
does not change the essential *character* of even a contingent substantial
interest, vested in right, which has accrued to a beneficiary.   See *Dunn*
v. *Sargent,* 101 Mass. 336, 339–340.   In *Opinion of the Justices* 337
Mass. 786, the Justices advised that the Legislature could validly amend
the statutes relating to inchoate rights of dower and curtesy (see p. 795)
"as contingencies before the death of the predeceasing spouse."   In
reaching this conclusion, the Justices were influenced by the considera-
tion that each as a practical matter today was of slight importance as
a "contingency of waning value" (p. 794).

. . . The contingencies upon which they depend may
have become so nearly certain of fulfilment that such in-
terests are practically equivalent to vested interests."
Not only practical difficulties in differentiating such in-
terests, but constitutional doubts (under the due process
and equal protection clauses) about the validity of legis-
lative impairment of, or discrimination among, such in-
terests lead us to conclude that the Legislature prescribed
no such discrimination.

At least as to biological children and grandchildren of
the testatrix, living prior to September 1, 1969, the effec-
tive date of the 1969 statute, we think that the interests
(described in the various quoted portions of the testa-
trix's will) of each of them in the trust income or corpus
became vested in right at the testatrix's death or at their
own births. They are not merely inchoate but are vested
in the sense that the interests have accrued to them, sub-
ject only to total or partial defeat by biological events.
If such substantial interests were to be taken away from
them by statute, there would be a significant question
whether and to what extent this could constitutionally be
done.[9] We assume that one reason for the insertion of
the 1969 proviso[10] may have been to remove constitu-

---

[9] *Tirrell* v. *Bacon,* 3 Fed. 62, 64–65 (D. Mass.). See *Dunn* v. *Sargent,*
101 Mass. 336, 337–338; *Belcher* v. *Burnett,* 126 Mass. 230, 231; *Clarke*
v. *Fay,* 205 Mass. 228, 235–236; *Whiteside* v. *Merchants Natl. Bank,*
284 Mass. 165, 174; *Re Graham Estate,* 379 Mich. 224, 228; *Wachovia
Bank & Trust Co.* v. *Andrews,* 264 N. C. 531, 536–537; Simes and
Smith, Future Interests (2d ed.) § 136. See also *Aetna Life Ins. Co.*
v. *Hoppin,* 214 Fed. 928, 935 (7th Cir.); *Central Trust Co.* v. *Bovey,*
25 Ohio St. 2d 187, 190–191. Cf. *Sewall* v. *Roberts,* 115 Mass. 262,
277–278; *Commerce Trust Co.* v. *Weed,* 318 S. W. 2d 289, 298–299
(Mo.); *In re Coe,* 42 N. J. 485, 494–495, 496; *Schneider* v. *Dorr,* 3 Ohio
Misc. 103, 126–127. Cf. also *In re Arens,* 41 N. J. 364, 385–387 (rule
of trust administration). For cases generally discussing interpretation
of wills and trusts in relation to possible interests of adopted children,
see *Johns* v. *Cobb,* 402 F. 2d 636, 638 (D. C. Cir.), cert. den. 393 U. S.
1087; *Meek* v. *Ames,* 177 Kans. 565, 571; *Trust of Patrick,* 259 Minn.
193, 196; *Trusteeship of Nash,* 265 Minn. 412, 414–416.

[10] Little help is given by the legislative history of the 1969 proviso.
Similar bills, introduced in the House of Representatives and the Sen-
ate (see 1969 Senate Bill No. 261; 1969 House Bill No. 685) were
heard by the Committee on Government Regulations on January 15.
Senate Bill No. 261 was reported favorably on January 21. See 1969
Senate Journal p. 493. Section 2 had been changed by striking out

tional doubts about the validity of the 1969 amendment without it. Our interpretation of the proviso should be consistent with the removal of those doubts. See *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701; *Opinion of the Justices,* 341 Mass. 760, 785; *O'Malley* v. *Public Improvement Commn. of Boston,* 342 Mass. 624, 628. Those doubts apply with equal force at least to all pre-1969 interests, in practical effect substantially the same, even if somewhat varying in form.

7. In the light of the foregoing general discussion, we answer the specific questions propounded to us by the report as follows: (1) It is not necessary now to consider whether St. 1969, c. 27, § 1, constitutes an unconstitutional deprivation of property in conferring rights on Mrs. Billings's adopted daughter Mrs. Neilsen, for we are of opinion that the proviso in St. 1969, c. 27, § 2, prevents such rights from being conferred, so far as concerns interests taken at least by those biological children and more remote issue of Mrs. Billings and Mr. William Plumer Fowler who were in being prior to September 1, 1969. (2) Mrs. Neilsen, with respect to the persons mentioned in the preceding answer, does not have the same rights to income and principal under the testatrix's will as do the specified biological issue of the testatrix. (3) Our answer to the first question also disposes of the third question.

8. The case is remanded to the Probate Court for further proceedings consistent with this opinion. Costs and expenses (including counsel fees) are to be in the discretion of the Probate Court.

*So ordered.*

---

the word "contingent" in the proviso and substituting the word "any," where that word (see fn. 3) now appears. This appears to be a slight broadening of the proviso. The bill was amended (1969 Senate Journal p. 567) on February 5, 1969, by adding § 3 with respect to the effective date (September 1, 1969). There is no evidence of any consultation, during the consideration of the bills, with trust draftsmen or fiduciaries, or (except by the presence of the proviso) of consideration of constitutional problems. The bill was approved on February 25, 1969. See 1969 Ann. Surv. Mass. Law, § 6.8.

Billings *v.* Fowler.

Appendix A.

various relevant predecessors of st. 1969, c. 27.

The following statutes show the varying methods since 1851 of dealing with the interpretation of trust instruments with respect to adopted children and to inheritance by such children.

1. *Statute 1851, c. 324,* § *6,* reads: "A child so adopted, as aforesaid, shall be deemed, for the purposes of inheritance and succession by such child . . . and all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if such child had been born in lawful wedlock of such parents or parent by adoption, saving only that such child shall not be deemed capable of taking property expressly limited to the heirs of the body or bodies of such petitioner or petitioners."

2. *Statute 1871, c. 310,* § *8,* reads: "A child or person so adopted shall be deemed for the purpose of inheritance, and all other legal consequences of the natural relation of parent and child, to be the child of the parent or parents by adoption, as if born to them in lawful wedlock, except that he shall not take property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

3. *Statute 1876, c. 213,* reads in part: *"Section 8.* As to the inheritance of property, any person adopted in accordance with the provisions of this act, shall take the same share which he would have taken if born to said adopting parent in lawful wedlock, of any property which such parent could have devised by will. In respect to inheritance also, he shall stand in regard to the legal descendants, but to no other of the kindred, of his adopting parent in the same position as if born to him in lawful wedlock." *Section 9* provided: "The term 'child,' or its equivalent, in any . . . devise or bequest, shall be held to include any child adopted by the . . . testator, unless the contrary plainly appears by the terms thereof; but in no other case shall a child by adoption have, under such an instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the . . . testator to include an adopted child: *provided, however,* that nothing in this act shall be construed to restrict any right to the succession to property which may have vested in any person already adopted in accordance with the laws of this Commonwealth."

4. *General Laws c. 210,* § *8* (see also Pub. Sts. c. 148, § 8, and R. L. c. 154, § 8), in effect continued this provision, as follows: "The word 'child', or its equivalent, in a . . . devise or bequest shall include a child adopted by the settlor, grantor or testator, unless the contrary plainly appears by the terms of the instrument; but if the . . . testator is not himself the adopting parent, the child by adoption shall not have, under such instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the . . . testator to include an adopted child."

5. The provision just quoted remained in effect until the effective date of St. 1958, c. 121 (which was on August 26, 1958, six months after its approval). Section 1 struck out the preëxisting form of G. L. c. 210, § 8, and inserted the following: *"Section 8.* The word 'child',

or its equivalent, in a grant, trust settlement, entail, devise or bequest shall include an adopted child to the same extent as if born to the adopting parent or parents in lawful wedlock unless the contrary plainly appears by the terms of the instrument." Section 2 of c. 121 reads: "The provisions of . . . [G. L. c. 210, § 8] as amended by section one of this act, shall be applicable only to . . . devises or bequests executed after the effective date of this act."

6. For St. 1969, c. 27, see fn. 3 of the opinion.