New England Merchants National Bank, trustee, vs.
Mary Ann Groswold & another[1]
(and a consolidated case).

Suffolk.   October 8, 1982. — January 5, 1983.

Present: Hennessey, C.J., Liacos, Nolan, & O'Connor, JJ.

*Adoption.   Devise and Legacy,* Adopted child, Issue.   *Trust,* Adopted
child, Vested right.   *Words,* "Vested."

The adopted daughter of a beneficiary of trusts created prior to the
amendment of G. L. c. 210, § 8, by St. 1958, c. 121, § 1, was not en-
titled to share in the distribution of the trust assets, where nothing in
either instrument made it appear that adopted children were to be in-
cluded as issue of the named beneficiaries.   [824-829]

Petition filed in the Essex Division of the Probate and
Family Court Department on June 22, 1981.

The case was heard by *Macdougall,* J.

Petition filed in the Suffolk Division of the Probate and
Family Court Department on July 2, 1981.

The case was heard by *Warner,* J.

The Supreme Judicial Court granted a request for direct
appellate review of the first case, and consolidated the cases
for appeal.

*James T. Ronan (Mary P. Harrington* with him) for
Diane Begin Hebert.

*Raymond H. Young* for Mary Ann Groswold.

*Eric F. Menoyo* for the plaintiff.

Nolan, J.   This appeal concerns whether the defendant
Diane Begin Hebert, the adopted daughter of a beneficiary
of two trusts created by Annie Knapp Hardy, is entitled to a
share of the distribution of the trust assets.   We hold that
she is not.

---

[1] Diane Begin Hebert.

The pertinent facts are as follows. Annie Knapp Hardy died in 1942. By her will, executed in 1931 and amended by codicils in 1938 and 1939, and by an inter vivos instrument executed in 1938 to be administered in Suffolk County, she created two trusts. The income from these trusts was to be distributed to certain named relatives and, upon the death of the last surviving named beneficiary, the trusts were to be terminated and the assets distributed to their issue.[2] The last income beneficiary died in 1980. The only surviving natural issue are the defendant Mary Ann (Draper) Groswold, who was a grandniece of Annie Knapp Hardy, and her three children. Diane Begin Hebert was adopted as an infant by Edith Hardy Judd, a niece of Annie Knapp Hardy and a named income beneficiary.

In 1981, New England Merchants National Bank, as trustee of both the testamentary trust and the inter vivos trust, filed petitions in the Probate Courts of Essex and Suffolk counties respectively, seeking to distribute the trust assets. Hebert sought to appear in each proceeding to oppose allowance of the petitions and, in each instance, Groswold moved successfully to strike Hebert's appearance. Thereafter, following hearings, judgments were entered ordering the trust assets distributed entirely to Groswold. Hebert appealed both the allowance of the motions to strike[3] and the judgments. We granted her application for direct appellate review of the Essex County matter, transferred the Suffolk County case here on our own motion, and consolidated the two for appeal.

The problem facing Hebert is that from 1876 (St. 1876, c. 213, § 9) until 1958 (St. 1958, c. 121, § 1), it was the law

---

[2] The defendant Mary Ann (Draper) Groswold was specifically named in the inter vivos trust as an income beneficiary but the trust was set to terminate "upon the death of the last survivor of the beneficiaries . . . other than Mary Ann Draper or her issue . . . ."

[3] The propriety of the allowance of the motions to strike was not argued on appeal. We deem the issue waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We assume, without deciding, that Hebert has standing to bring this appeal.

in this Commonwealth that a testator or settlor who used the word "child" or its equivalent in an instrument intended to include his own adopted children but that a "stranger to the adoption" did not intend to include adopted children by use of those terms.[4] Revised Laws c. 154, § 8 (1902), later codified as G. L. c. 210, § 8, representing the substance of the law through 1958, provided that: "The word 'child', or its equivalent, in a grant, trust-settlement, entail, devise or bequest shall include a child adopted by the settlor, grantor or testator, unless the contrary plainly appears by the terms of the instrument; but if the settlor, grantor or testator is not himself the adopting parent, the child by adoption shall not have, under such instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the settlor, grantor or testator to include an adopted child."

Since there is nothing in either instrument which would make it plainly appear that adopted children were to be included as "issue," Hebert cannot take if that law is applicable. This much is settled by our decisions in *Davis* v. *Hannam*, 369 Mass. 26 (1975), which held that the adopted granddaughter of a testator who died in 1929 was not entitled to that portion of the testamentary trust income which had been left to her adopted mother and, at her death, to the mother's "issue," and in *Boston Safe Deposit & Trust Co.* v. *Fleming*, 361 Mass. 172, appeal dismissed, 409 U.S. 813 (1972), which held that the adopted grandchildren of a testator who died in 1901 were not entitled to share in the distribution of trust assets which were to be paid to the "issue" of testator's daughter after her death. See *State St. Bank & Trust Co.* v. *D'Amario*, 368 Mass. 542, 546 (1975); *Perkins* v. *New England Trust Co.*, 344 Mass. 287 (1962).

---

[4] Statute 1876, c. 213, was passed largely in response to *Sewall* v. *Roberts*, 115 Mass. 262 (1874), in which this court interpreted an adoption statute then in force as to allow an adopted child to take as "issue" under a will providing for a gift over. See *Wyeth* v. *Stone*, 144 Mass. 441, 443 (1887).

Hebert concedes the steep hill which she must climb and hence the thrust of her argument on appeal is that, in the interests of fairness, we should now give effect to the modern and enlightened policy expressed in the 1958 amendment to G. L. c. 210, § 8 (St. 1958, c. 121, § 1), of treating natural and adopted children equally, by retroactively applying that amendment to this case. Hebert contends that such a retroactive application would be constitutionally sound, give adopted children the benefit of subsequent amendments to G. L. c. 210, § 8, eliminate inherent unfairness in the statute, and harmonize the statute with other laws dealing with inheritance.[5]

---

[5] Hebert also contends that application of the pre-1958 version of G. L. c. 210, § 8, would deny her the equal protection of the laws as guaranteed by art. 1 of the Massachusetts Declaration of Rights. It does not appear in the record that this issue was raised below and therefore we will not consider it here. See *Commonwealth* v. *Proctor,* 355 Mass. 504, 506 (1969); *Foster* v. *Everett,* 334 Mass. 14, 18 (1956); *Outdoor Advertising Bd.* v. *Sun Oil Co.,* 8 Mass. App. Ct. 872, 873 (1979). While "[o]rderly rules of procedure do not require sacrifice of the rules of fundamental justice," *Hormel* v. *Helvering,* 312 U.S. 552, 557 (1941), this is not such an exceptional case nor are there such particular circumstances that would "prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." *Id.* However, if we were to consider it, we would be guided by the principles enunciated in *Beals* v. *Commissioner of Corps. & Taxation,* 370 Mass. 781 (1976), wherein we rejected a challenge on equal protection grounds to an inheritance tax law which imposed taxes on transfers of property to certain adopted children where no tax would be imposed if the transfer had been made to the natural children. In analogizing the inheritance tax law to G. L. c. 210, § 8, we stated that "[t]he different treatment given adopted children from that given natural children under our former probate law was not constitutionally infirm." *Id.* at 786, citing by analogy *Labine* v. *Vincent,* 401 U.S. 532 (1971), which rejected an equal protection challenge to State intestacy laws which favored collateral relations over the testator's acknowledged, illegitimate child. Accord, *Lalli* v. *Lalli,* 439 U.S. 259 (1978) (rejecting equal protection challenge to statute which precluded the asserted illegitimate son of intestate from taking under intestacy laws because there was no court declaration of paternity during intestate's lifetime). But see *Lowell* v. *Kowalski,* 380 Mass. 663, 664-665 (1980). See also *Boston Safe Deposit & Trust Co.* v. *Fleming,* 361 Mass. 172, 179 n.7, appeal dismissed, 409 U.S. 813 (1972), which discussed without deciding an equal protection challenge to G. L. c. 210, § 8, as it read prior to 1958.

General Laws c. 210, § 8, as appearing in St. 1958, c. 121, §§ 1, 2, prospectively eliminated the disparate treatment of a child adopted by a testator or settlor and one adopted by others by providing that the word "child," or its equivalent would include all adopted children in any instruments executed on or after August 26, 1958, the effective date of the amendment.[6] Chapter 210, § 8, was further amended by St. 1969, c. 27, to include more terms which were to be construed as presumptively including adopted children.[7] Chapter 210, § 8, as then appearing, was made applicable to all instruments, regardless of date of execution, except that it would not apply to any grant or devise "which was executed or effective prior to August . . . [26, 1958] with respect to any interests or right therein which had vested prior to the effective date of this act." St. 1969, c. 27, § 2. In 1975, c. 210, § 8, was amended once again by St. 1975, c. 769, §§ 3, 4, which repealed the retroactive application of the 1969 amendment and replaced it with a provision making G. L. c. 210, § 8, applicable only to instruments executed after September 1, 1969.

---

[6] General Laws c. 210, § 8, as appearing in St. 1958, c. 121, § 1, provides: "The word 'child', or its equivalent, in a grant, trust settlement, entail, devise or bequest shall include an adopted child to the same extent as if born to the adopting parent or parents in lawful wedlock unless the contrary plainly appears by the terms of the instrument."

[7] Chapter 27, § 1, revised § 8 to read: "The words 'child', 'grandchild', 'issue', 'heir', or 'heir-at-law', or their respective equivalents, in a grant, trust settlement, entail, devise or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock, whether the adoption was decreed before or after the date of execution or the effective date of any such grant, trust settlement, entail, devise or bequest, unless the contrary plainly appears in the instrument." Section 2 of the 1969 amendment provided that § 8 "as amended by section one of this act, shall be applicable to all grants, trust settlements, entails, devises or bequests whether the same were executed or effective before or after the effective date of this act provided that said provisions shall not apply to any such grant, trust settlement, entail, devise or bequest which was executed or effective prior to August . . . [26, 1958] with respect to any interests or right therein which had vested prior to the effective date of this Act." By § 3 of the 1969 act it was to "take effect on September" 1, 1969.

In *Perkins* v. *New England Trust Co.,* 344 Mass. 287, 294 (1962), we held that passage of the 1958 amendment to G. L. c. 210, § 8, did not impliedly repeal the prior statutory provisions which set forth a rule of construction concerning when adopted children would take. We think that the 1958 amendment, taken together with the amendments in 1969 and 1975, indicates the Legislature's intent to draw 1958 as a bright line for application of G. L. c. 210, § 8. Cf. *Beals* v. *Commissioner of Corps. & Tax'n,* 370 Mass. 781, 784 (1976). Assuming no constitutional impediments, we will not give retroactive effect to the policy of the 1958 amendment in these circumstances. "All of us recognize that there is a natural desire to give effect to the humanitarian legislative policy of St. 1958, c. 121, § 1 . . . . We cannot join, however, in what seems to us a retroactive promulgation of a new and unexpected rule . . . ." *Boston Safe Deposit & Trust Co.* v. *Fleming, supra* at 181.

Hebert contends that application of G. L. c. 210, § 8, as amended by St. 1975, c. 769, § 3, to the facts of this case would unconstitutionally deprive her of the rights granted her under the 1969 amendment. The short answer to this, of course, is that the law in effect at the time of the testator's death is the applicable law. See *Davis* v. *Hannam,* 369 Mass. 26, 29-30 (1975). Even if we were to assume that the 1975 amendment applied to the instruments here at issue, Hebert would gain nothing. The 1969 amendment did not apply to wills or trusts executed before August 26, 1958, to the extent that rights under such wills or trusts had "vested."[8] In *Billings* v. *Fowler,* 361 Mass. 230 (1972), we declined to take a technical view of the term "vested" and held instead that the term "contemplates appraisal whether, in substance, the interest is sufficiently established to constitute an interest or right which had accrued to its holder." *Id.* at 240. Rights which were "not merely inchoate but . . . vested in the sense that the interests have accrued to [the named beneficiaries], subject only to total or partial defeat by bio-

---

[8] See note 7, *supra.*

logical events," *id.* at 241, were protected from application of the retroactive provisions. We have consistently applied this nontechnical definition in subsequent decisions. *Davis* v. *Hannam,* 369 Mass. 26, 30-31 (1975). *State St. Bank & Trust Co.* v. *D'Amario,* 368 Mass. 542, 549, 552 n.10 (1975). *Boston Safe Deposit & Trust Co.* v. *Dean,* 361 Mass. 244, 248 (1972). In the present case, Groswold has had a substantial interest in the testamentary trust since 1942 and in the inter vivos trust since 1938. Her interests were subject to defeat only in the event of her predeceasing her mother, her uncle and her two aunts (all named beneficiaries),[9] and were subject to dilution only in the event that one of these persons had other natural children. We think that the interests here were sufficiently "vested" in 1969 to preclude application of the 1969 amendment to them. It follows that Hebert was granted no rights under the 1969 amendment.[10] See *Billings* v. *Fowler, supra* at 242. Consequently, the 1975 amendment, which repealed the retroactive application of the 1969 amendment, deprived her of nothing.[11]

The facts that an adopted child would now take under the intestacy laws from his adopted parents but not from his natural parents or kindred (with one exception), G. L.

---

[9] In the event that Mary Ann Draper predeceased the other beneficiaries of the inter vivos trust, her interest in that trust would pass to her issue subject to certain limitations.

[10] Construing the 1969 provision as a grant of rights to adopted children in itself involves serious constitutional questions concerning "the Legislature's power to destroy a long-since executed gift of rights that by the terms of the instrument . . . had become indefeasible." *State St. Bank & Trust Co.* v. *D'Amario, supra* at 553.

[11] To the extent that Hebert's argument implies that our definition of the term "vested" is improper for purposes of applying G. L. c. 210, § 8, as amended by St. 1969, c. 27, § 1, we stand by the reasoning of the cases cited in the text above and decline to reconsider them. We do not decide what effect the 1975 amendment would have on any interests created by an instrument executed before August 26, 1958, that had not vested prior to the effective date of the 1969 amendment. We do not suggest that the 1969 amendment, if applicable, would have created rights which the 1975 amendment could alter.

c. 210, § 7, as amended by St. 1975, c. 769, § 1, and that an adopted child would now take under the lapsed legacy law, G. L. c. 191, § 22, as amended by St. 1977, c. 76, § 2, do not create such a conflict with our application of G. L. c. 210, § 8, here as to warrant our refusing to abide by the unambiguous language of the statute.   General Laws c. 210, § 8, is simply an aid to the construction of wills and trusts (see *Beals* v. *Commissioner of Corps. & Taxation,* *supra* at 784; *Perkins* v. *New England Trust Co.*, *supra* at 294), and as such, creates no rights or interests which could possibly conflict, practically or theoretically, with rights or interests granted or denied under other statutes.   By will or by specific provisions of an indenture of trust, a person has always been free to avoid application of the intestacy laws or the lapsed legacy law to the distribution of his or her property.   These laws serve only to direct the distribution of property in the absence of direction by the owner.

For the above reasons, we conclude that Hebert is not entitled to share in the distribution of the trust assets.[12]

*Judgments affirmed.*

---

[12] Contrary to Hebert's assertion, there is nothing in *Moore* v. *Cannon,* 347 Mass. 594 (1964), which would support the notion that an adopted grandchild may take as "issue" under the terms of G. L. c. 210, § 8, prior to the amendment in 1958.   We took care to note there that the term "issue" "when used in a disposition by a person not the adoptive parent or a descendant of such parent, [has] been construed as not including an adopted child," although we declined to extend the rationale of cases so holding to the situation there where the testator had, in effect, treated his deceased's son's share "as if legal title to it had been vested in [the son]." *Id.* at 599.   See *Boston Safe Deposit & Trust Co.* v. *Fleming, supra* at 178-179.