JOHN M. CALLAN, executor & trustee, *vs*. JAMES G. WINTERS
& others[1].

Middlesex.   November 10, 1988. — February 28, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Adoption. Devise and Legacy*, Adopted child, Vested right. *Trust*, Adopted
child, Vested right.

Four children adopted by a beneficiary of a remainder interest under a
testamentary trust in a will executed February 24, 1958, were not "issue"
so as to be entitled to share in the distribution of the trust, for the reason
that St. 1975, c. 769, §§ 3 & 4, barred the retroactive application of
G. L. c. 210, § 8, as amended by St. 1969, c. 27, to instruments
executed before August 26, 1958. [202-203]

CIVIL ACTION commenced in the Middlesex Division of the
Probate and Family Court Department on July 23, 1986.

The case was heard by *Arthur G. Coffey*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Edward F. Finnegan* (*Paul G. Sargent* with him) for Diane
Matte.

*Dennis E. McHugh* for William J. Mahoney & others.

LIACOS, J. The plaintiff, John M. Callan, as executor of the
estate of Hattie L. Wilby and trustee of a trust established
under her will, brought a complaint for declaratory judgment
seeking a determination whether certain adopted children[2] are
entitled to share in the distribution of the trust. See *Billings*
v. *Fowler*, 361 Mass. 230, 233-234 (1972) (complaint seeking
declaratory relief may be utilized to same effect as traditional

---

[1] Diane Matte, William J. Mahoney, Richard L. Mahoney, John P. Winters, and Mary L. Streeter, formerly known as Mary L. Winters.

[2] William J. Mahoney, Richard L. Mahoney, John P. Winters, and Mary L. Streeter, adopted children of the late Charles Albert Winters.

petitions for instructions). A judge of probate held that the adopted children are so entitled. The natural child appealed.[3] We transferred the case to this court on our own motion. We reverse.

We summarize the relevant facts. On February 24, 1958, Hattie L. Wilby (testatrix) executed a will in which she left certain property to her niece, Grace L. Stachowiak. The will also established a trust for the remainder of the estate, naming Stachowiak as the sole beneficiary for life. On Stachowiak's death, the will provided that the trust estate be divided in two shares and distributed equally to Charles A. Winters and James G. Winters, the grandnephews of the testatrix, should they survive the life beneficiary, free and clear of all trusts. In the event that one, or both, of her grandnephews predeceased the life beneficiary, the testatrix provided that his share "shall be apportioned for the benefit of the issue then and from time to time living."

One of the grandnephews, Charles A. Winters, predeceased the life beneficiary, dying in 1977. He was survived by Diane Matte, his natural child from his first marriage, his four adopted children (who are the natural children of his second wife), and his second wife. The four children were adopted on November 12, 1976, after the death of the testatrix but before the death of the life beneficiary. The testatrix died on June 1, 1971. Stachowiak, the life beneficiary, died in 1985.[4]

Our task is to determine whether the four adopted children are to be considered "issue" under the will. We note, at the outset, that, since the four children were not adopted until November 12, 1976, they could have no interests which "vested" prior to that date. See *Davis* v. *Hannam*, 369 Mass. 26, 31 (1975); *Billings* v. *Fowler, supra* at 239-242.

In construing a testamentary instrument, we generally apply "the law in effect at the time of the testator's death." *New*

---

[3] Diane Matte, natural child of Charles Albert Winters.

[4] James G. Winters, the testatrix's second natural grandnephew, survived the life beneficiary and received one-half of the trust distribution. The parties do not dispute the validity of this result.

*England Merchants Nat'l Bank* v. *Groswold*, 387 Mass. 822, 827 (1983). *Davis* v. *Hannam, supra* at 29-30. *Boston Safe Deposit & Trust Co.* v. *Fleming*, 361 Mass. 172, 176, appeal dismissed, 409 U.S. 813 (1972). In order to place the law as it stood in 1971 in perspective, we outline the numerous statutory modifications made over the past few decades.[5] From 1876 until August 26, 1958, a testator other than the adopting parent who used the word "child," or its equivalent, was deemed to intend to exclude adopted children unless the intent was otherwise manifested. St. 1876, c. 213, § 9.[6] In 1958, the Legislature amended the statute so that the word "child" in an instrument would be deemed to include adopted children, whether or not the testator was the adopting parent. G. L. c. 210, § 8, as appearing in St. 1958, c. 121, §§ 1 and 2.[7]

---

[5] A more extensive statement of the history of the statutes pertaining to the rights of adopted children under wills and trusts is found in *Boston Safe Deposit & Trust Co.* v. *Fleming, supra* at 175-178. *Billings* v. *Fowler, supra* at 234-237.

[6] Statute 1876, c. 213, § 9, provided: "The term 'child,' or its equivalent, in any grant, trust-settlement, entail, devise or bequest, shall be held to include any child adopted by the settler, grantor, or testator, unless the contrary plainly appears by the terms thereof; but in no other case shall a child by adoption have, under such an instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the settler, grantor or testator to include an adopted child: *provided, however*, that nothing in this act shall be construed to restrict any right to the succession to property which may have vested in any person already adopted in accordance with the laws of this Commonwealth." Later modifications essentially continued this provision. See Pub. Sts. c. 148, § 8 (1882), and R.L. c. 154, § 8 (1902). Statute 1876, c. 213, § 9, together with its modifications, became G. L. c. 210, § 8.

[7] Statute 1958, c. 121, §§ 1-3, provided: "SECTION 1. Chapter 210 of the General Laws is hereby amended by striking out section 8, as appearing in the Tercentenary Edition, and inserting in place thereof the following section: — *Section 8*. The word 'child', or its equivalent, in a grant, trust settlement, entail, devise or bequest shall include an adopted child to the same extent as if born to the adopting parent or parents in lawful wedlock unless the contrary plainly appears by the terms of the instrument.

The statutory change was to apply only to instruments executed after August 26, 1958, the effective date of the act. Thus, on its face, this statute did not apply to the will of the testatrix, executed in February, 1958.

In 1969, the Legislature further amended the statute, adding more terms which were to be interpreted as including adopted children. St. 1969, c. 27.[8] The 1969 statute made the adoption provision retroactive, regardless of the date of execution of the instrument, except that it excluded from its application any instrument "which was executed or effective prior to August [26, 1958,] with respect to any interests or right therein which had vested prior to the effective date of this act." St. 1969, c. 27, § 2. The effective date of the act was September 1, 1969. St. 1969, c. 27, § 3.

---

"SECTION 2. The provisions of section eight of chapter two hundred and ten of the General Laws, as amended by section one of this act, shall be applicable only to grants, trust settlements, entails, devises or bequests executed after the effective date of this act.

"SECTION 3. This act shall take effect six months after its passage".

[8] Statute 1969, c. 27, provided: "SECTION 1. Chapter 210 of the General Laws is hereby amended by striking out section 8, as amended by section 1 of chapter 121 of the acts of 1958, and inserting in place thereof the following section: —

"*Section 8.* The words 'child', 'grandchild', 'issue', 'heir' or 'heir-at-law', or their respective equivalents, in a grant, trust settlement, entail, devise or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock, whether the adoption was decreed before or after the date of execution or the effective date of any such grant, trust settlement, entail, devise or bequest, unless the contrary plainly appears by the terms of the instrument.

"SECTION 2. The provisions of section eight of chapter two hundred and ten of the General Laws, as amended by section one of this act, shall be applicable to all grants, trust settlements, entails, devises or bequests whether the same were executed or effective before or after the effective date of this act provided that said provisions shall not apply to any such grant, trust settlement, entail, devise or bequest which was executed or effective prior to August twenty-six, nineteen hundred and fifty-eight with respect to any interests or right therein which had vested prior to the effective date of this act.

"SECTION 3. This act shall take effect on September one, nineteen hundred and sixty-nine."

In 1975, the Legislature amended St. 1969, c. 27, § 2, repealing its retroactive application and providing that the repeal "shall take effect as of September first, nineteen hundred and sixty-nine." St. 1975, c. 769, §§ 3 and 4.[9] Additionally, the statute's provision that the word "issue" ordinarily shall include adopted children was limited in its application "to grants, trust settlements, entails, devises or bequests, executed after [September 1, 1969]." Thus, again, the will of the testatrix was excluded.

Ordinarily, in determining what was the law at the time of the testatrix's death, it would not be necessary to look to any legislative enactments which transpired after the testatrix's death. We generally apply the law at the time of death, with the understanding that testators have kept abreast of the changes in the law and would make appropriate revisions in their instruments if these changes contravened their original expectations. Here, it may be said, fairly, that the 1975 amendment restored the state of the law, as to the will in issue, in a manner consistent with the law at the time the will was executed. The Legislature, by repealing the retroactive provisions to the 1969 act, and by making this repeal effective as of September 1, 1969, essentially redefined what was the law in effect at the time of the testatrix's death in 1971.

This court must give effect to the Legislature's intent, barring any constitutional impediments. See *Nantucket Conservation Found.* v. *Russell Management, Inc.*, 380 Mass. 212, 214-215 (1980). There having been raised in this case no constitutional

---

[9] Statute 1975, c. 769, §§ 3 and 4, provided: "SECTION 3. Chapter 27 of the acts of 1969 is hereby amended by striking out section 2 and inserting in place thereof the following section: —

"*Section 2.* The provisions of section eight of chapter two hundred and ten of the General Laws, as amended by section one of this act, shall be applicable only to grants, trust settlements, entails, devises or bequests executed after the effective date of this act.

"SECTION 4. Section three of this act shall take effect as of September first, nineteen hundred and sixty-nine. *Approved December 16, 1975.*"

challenges to the 1975 amendment,[10] we hold that the 1975 amendment barred the retroactive application of G. L. c. 210, § 8, to an instrument executed before August 26, 1958, and that, accordingly, the four adopted children are not entitled to share in the distribution of the trust.

*Judgment reversed.*

---

[10] We note that, if vested interests were involved, the 1975 amendment might be subject to constitutional attack. See *State St. Bank & Trust Co.* v. *D'Amario*, 368 Mass. 542, 552-553 (1975) (expressing doubts as to the validity of a statute which takes away vested interests); *Billings* v. *Fowler*, 361 Mass. 230, 241 (1972). See also *Nantucket Conservation Found.* v. *Russell Management, Inc.*, *supra* at 215-219. The adopted children have raised no such argument. We note, without deciding the issue, that, because the adoptees in this case were not adopted until 1976, they would not likely succeed in a claim that the 1975 amendment deprived them of a vested right.