Henry, Bruce R., J.
This matter is a ten-taxpayer action challenging the City of Newton’s appropriation of $765,825 of Community Preservation Act funds for projects at two parks within the City. Before the Court is the Plaintiffs Motion For Summary Judgment. For the reasons which follow, the motion is ALLOWED.

Facts

In evaluating a motion for summary judgment, the Court must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the non-moving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). The material undisputed facts as revealed by the summary judgment record are as follows.
The City of Newton (City) owns and operates the Steams and Pellegrini Parks (Parks). Each park in question is an existing recreation land which has been used as such from the time predating the enactment of the Community Preservation Act (CPA). The Stearns Park is 3.5 acres and “contains both passive and active recreation areas, including a large open space with benches, game tables, walkways; abasketball court; alittle league baseball diamond; a tot-lot; swing sets; and two tennis courts.” Def. Adm., Part II, No. 9 (Exhibit 1 at 7). The Pellegrini Park has an area of 4.5 acres and “has active recreation facilities, including soccer, softball, two tennis courts, indoor and outdoor basketball, indoor volleyball, and children’s play structures.” Def. Adm., Part II, No. 12 (Exhibit 1 at 7-8). Neither Park has been created or acquired with CPA funds. Def. Adm., Part VIII, Nos. 17-18 (Exhibit 1 at 26-27).
In November 2001, the voters of the City of Newton accepted §§3-7 of the CPA. The Community Preservation Act Committee (“Committee”) was established pursuant to §5 of the Act and is an instrumentality of the City of Newton. The Board of Aldermen (“Board”) is an instrumentality of the City of Newton and is the legislative body pursuant to §5 of the Act that approves the Committee’s recommendations for CPA funding.
On or about February 6, 2006, the Committee recommended to the Board the appropriation of CPA funds for projects at the Parks. On or about May 15, 2006, the Board approved the allocation of $765,825 in CPA funding for projects at the Parks. The various elements which are included in each of the proposed projects are as admitted in the Ciiy’s Responses To Plaintiffs’ First Request For Admissions, Response No. 1, pp. 14-16 (with the exception of item cc) and Response No. 2, pp. 16-19.

Applicable Statutory Provisions

Some of the provisions of the CPA, G.L.c. 44B which are applicable to this matter are as follows;
A city or town that accepts sections 3 to 7, inclusive, shall establish by ordinance or by-law a community preservation committee. §5(a).
The community preservation committee shall study the needs, possibilities and resources of the city or town regarding community preservation. The committee shall consult with existing municipal boards, including the conservation commission, the historical commission, the planning board, the board of park commissioners and the housing authority, or persons acting in those capacities or performing like duties, in conducting such studies. As part of its study, the committee shall hold one or more public informational hearings on the needs, possibilities and resources of the city or town regarding community preservation possibilities and resources, notice of which shall be posted publicly and published for each of two weeks preceding a hearing in a newspaper of general circulation in the city or town. §5(b)(l).
The community preservation committee shall make recommendations to the legislative body for the acquisition, creation and preservation of open space; for the acquisition, preservation, rehabilitation and restoration of historic resources; for the acquisition, creation and preservation of land for recreational use; for the acquisition, creation, preservation and support of community housing; and for the rehabilitation or restoration of open space, land for recreational use and community housing that is acquired or created as provided in this section. With respect to community housing, the community preservation committee shall recommend, wherever possible, the reuse of existing buildings or construction of new buildings on previously developed sites. §5(b)(2).
After receiving such recommendations from the community preservation committee, the legislative body shall then take such action and approve such appropriations from the Community Preservation Fund as set forth in section 8, and such additional appropriations as it deems appropriate to carry out the recommendations of the community preservation committee. §5(d).

§2. Definitions

“Community preservation,” the acquisition, creation and preservation of open space, the acquisition, creation and preservation of historic resources and the creation and preservation of community housing.
“Community preservation committee,” the committee established by the legislative body of a city or town to make recommendations for community preservation, as provided in section 5.
“Community Preservation Fund," the municipal fund established under section 7.
“Legislative body,” the agency of municipal government which is empowered to enact ordinances or by-laws, adopt an annual budget and other spend *276 ing authorizations, loan orders, bond authorizations and other financial matters and whether styled as a city council, board of aldermen, town council, town meeting or by any other title.
“Maintenance,” the upkeep of real or personal property.
“Open space,” shall include, but not be limited to, land to protect existing and future well fields, aquifers and recharge areas, watershed land, agricultural land, grasslands, fields, forestland, fresh and salt water marshes and other wetlands, ocean, river, stream, lake and pond frontage, beaches, dunes and other coastal lands, lands to protect scenic vistas, land for wildlife or nature preserve and land for recreational use.
“Preservation,” protection of personal or real property from injury, harm or destruction, but not including maintenance.
“Real property,” land, buildings, appurtenant structures and fixtures attached to buildings or land, including, where applicable, real property interests.
“Recreational use,” active or passive recreational use including, but not limited to, the use of land for community gardens, trails, and noncommercial youth and adult sports, and the use of land as a park, playground or athletic field. “Recreational use” shall not include horse or dog racing or the use of land for a stadium, gymnasium or similar structure.
“Rehabilitation,” the remodeling, reconstruction and making of extraordinary repairs to historic resources, open spaces, lands for recreational use and community housing for the purpose of making such historic resources, open spaces, lands for recreational use and community housing functional for their intended use, including but not limited to improvements to comply with the Americans with Disabilities Act and other federal, state or local building or access codes.

Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party must satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). All evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992). Summary judgment, when appropriate, may be rendered against the moving party. Mass.R.Civ.P. 56(c).

Discussion

Section 5(b)(2) of the CPA authorizes expenditures of CPA funds “for the acquisition, creation and preservation of open space ... for the acquisition, creation and preservation of land for recreational use . . . and for the rehabilitation or restoration of open space, land for recreational use and community housing that is acquired or created as provided in this section.” Whether the use of CPA funds is appropriate for the proposed projects at the Parks depends upon the interpretation of that section of the CPA. Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In interpreting the applicable provisions of the CPA, I must give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
There is no dispute that the Parks were neither acquired nor created with CPA funds. The City argues that the projects will create new uses for the Parks and open the Parks to new users. While that may be true, and laudable, I do not adopt the interpretation which the City seeks to place on the word “creation.” The word “creation” refers specifically to the creation of land for recreational use. The Parks have been dedicated to recreational use for some time, which predates the passage of the CPA. The Projects do not “create” land for recreational use and I do not accept the meaning which the City attempts to place on that word.
The other purposes for which CPA funds may be used is for the preservation of land for recreational use or for the rehabilitation or restoration of land for recreational use. “Preservation” is defined very narrowly in §2 of the CPA as the “protection of personal or real property from injury, harm or destruction, but not including maintenance.” Although the City, through the Affidavit of Ms. Bailey, attempts to characterize some of the work as preservation, it is clear that what is claimed is the rehabilitation and/or restoration of the Parks in keeping with their recreational purposes. “Rehabilitation” and “restoration” are separately defined in the CPA and are not included within the narrow definition of “preservation.” While using CPA funds for the rehabilitation or restoration of *277 recreational land is permitted under the CPA, it is permitted only for those recreational lands which were originally acquired or created with CPA funds. It is undisputed that the Parks were not so acquired or created in this case.
As the City’s proposed use of the CPA funds does not comport with any of the authorized uses in §5(b) (2) of the CPA, the appropriation of the CPA funds for the projects at the Steams and Pellegrini Parks was not appropriate and the plaintiffs are entitled to summary judgment.

ORDER

For the foregoing reasons, the plaintiffs are entitled to summary judgment declaring that:
1. The proposed projects at the Stearns and Pellegrini Parks in the City of Newton constitute rehabilitation or renovation of those parks, which were not acquired or created with Community Preservation Act (CPA) funds.
2. The use of CPA funds for those projects is not permitted by the CPA.
3. The recommendation of the Community Preservation Committee of the City of Newton (CPC) that CPA funds be used for the projects at the Steams and Pellegrini Parks violated the provisions of the CPA.
4. The approval of the Board of Aldermen of the City of Newton of the recommendation of the CPC that CPA funds be used for the projects at the Stearns and Pellegrini Parks violated the provisions of the CPA.