J. WINTHROP DAVIS & another, trustees *vs.* BETTY
CHARLESWORTH HANNAM & others.

Norfolk.    September 15, 1975. — November 5, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Adoption.    Trust,* Adopted child, Issue, Vested right.    *Words,*
"Issue," "Child."

Under a will establishing a residuary trust the income of which was
payable to the testator's biological daughter for life and on her
death to her "issue" until termination of the trust, each of the
testator's biological children surviving him acquired a "vested"
interest in such income on his death in 1929 within the proviso in
§ 2 of St. 1969, c. 27, and the biological issue of such children
born prior to the effective date of that statute acquired a vested
interest in such income at his or her birth within such proviso
since it was impossible by reason of age for the testator's daughter
to have biological children in 1969; and the proviso precluded
G. L. c. 210, § 8, as appearing in St. 1969, c. 27, § 1, from con-
ferring rights in such income on a child adopted by the testator's
daughter. [29-31]
The will of a testator who died in 1929 survived by four biological
children and an adopted daughter did not plainly indicate that it
was the intention of the testator to include adopted children as
beneficiaries, and where the will established a residuary trust the
income of which was payable to the testator's biological daughter
for life and on her death to her "issue" until termination of the
trust, and she died in 1971 leaving only a child adopted by her in
1946, under G. L. c. 210, § 8, as in effect in 1929, her adopted
child was not entitled to share in such income. [31-32]

PETITION filed in the Probate Court for the county of Norfolk on June 20, 1972.

The case was reserved and reported to the Appeals Court by *Podolski*, J., and the Supreme Judicial Court, on its own initiative, ordered direct review.

The case was submitted on briefs.

*Timothy H. Donohue*, guardian ad litem, for Simon Bond Hichisson & others.

*Michael L. Colten*, guardian ad litem, for Pauline Ballard & others.

HENNESSEY, J. The petitioners, J. Winthrop Davis and The First National Bank of Boston, as trustees under the will of Charles Davis, brought this suit in the Probate Court seeking instructions concerning whether and to what extent Betty Charlesworth Hannam, the adopted granddaughter of the testator Charles Davis, and other adopted issue of the testator are entitled to share in the current trust income and are to be regarded as beneficiaries under the will. Two guardians ad litem were appointed, one to represent the interests of what may conveniently be called the "biological issue" of Charles Davis, and one to represent the interests of the "adopted issue" of the testator. A judge of the Probate Court, without decision, has reported the case with a statement of agreed facts for a determination of the questions raised by the petition.

Charles Davis, late of Milton, Massachusetts, executed a will on September 23, 1926. The will was republished in three subsequent codicils, dated September 26, 1927, April 3, 1929, and July 10, 1929, respectively. The testator died on December 26, 1929, survived by four biological children, Pauline, Suzette, J. Winthrop and Reginald, and by one adopted daughter, Elinor. Only J. Winthrop and Reginald are still alive.

The petition for instructions in this case is concerned solely with that portion of the trust income left to the testator's daughter, Pauline. Under art. V, 2 (1), the testator provided that Pauline was to receive a yearly

income of $10,000 under the trust. The will further provided that on Pauline's death the trustees were to pay one-half of the annual income (i.e., $5,000) to those designated by Pauline pursuant to a testamentary power of appointment granted to her in the will.[1] The balance of the $10,000 annual income not payable in accordance with the exercise of the power of appointment was to be paid "to the issue of my said daughter, Pauline, if any, from time to time living, by right of representation, until the time fixed for the termination of the trust under this Article of my will, or until the death during the continuance of the trust of the last to die of the issue of my said daughter, whichever is the earlier." Article V, 5 (1) and (2), as amended by the third codicil, provided for the disposition of the remainder of the trust income to several designated beneficiaries and is set forth below.[2]

---

[1] Pauline exercised the testamentary power of appointment granted her under art. V, 2 (1), of the will by appointing $5,000 income each year in equal shares to the issue of Mary Hope Balfour Hichisson (the daughter of Pauline's adopted daughter, Betty) who survived her (Pauline). Pauline's will was duly proved and allowed by decree dated May 28, 1971, of the Probate Court for the town of Stonington, Connecticut. That decree has become final and is no longer subject to appeal. Therefore, we are not here concerned with the $5,000 annual income appointed by Pauline pursuant to the testamentary power of appointment.

[2] "5. . . . to dispose of the remainder of said net income, if any, as follows: (1) To pay the first two thousand (2000) dollars of said remainder, or all of said remainder in any year or years in which said remainder shall be less than two thousand (2000) dollars, one-half (1/2) to Milton Hospital, of said Milton, and the remaining one-half (1/2) to and among my children from time to time living and the survivors and survivor of them, equally as long as two or more are living, and if or whenever during the continuance of the trust no children of mine shall be living, to pay said remaining one-half (½) to my issue from time to time living by right of representation; and (2) All the balance of said remainder, in any year or years in which said remainder exceeds two thousand (2000) dollars, to and among my said children from time to time living and the survivor and survivors of them equally as long as two or more are living, and if or whenever during the continuance of the trust no children of mine

The testator's daughter, Pauline, died on March 17, 1971, leaving only an adopted daughter, Betty. Although Pauline had never had any biological children, by a decree dated July 10, 1946, of the Surrogate's Court for Nassau County, New York, Pauline, who was then fifty-eight years of age, and her husband adopted Betty, who was then thirty-eight years of age. At the time of the adoption, Betty had two biological children, Mary Hope Balfour Hichisson and John Michael Watkins Hannam. Both Betty and her two children are still alive.

The question for our decision is whether Pauline's adopted daughter should be considered "issue" and thus entitled to the balance of the $10,000 yearly income (i.e., $5,000) not payable pursuant to the exercise of the testamentary power of appointment given to Pauline under the testator's will. Necessarily, a resolution of this question will be determinative as to the rights of other adopted issue, present and future, under the testator's will.[3]

The law at the date of the testator's death applicable to the present case was G. L. c. 210, § 8, which provided: "The word 'child', or its equivalent, in a . . . devise or bequest shall include a child adopted by the . . . testator, unless the contrary plainly appears by the terms of the instrument; but if the . . . testator is not himself the adopting parent, the child by adoption shall not have, under such instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the . . . testator to include an adopted child." In 1958, c. 210, § 8, was

shall be living, to my issue from time to time living by right of representation."

[3] Included within the category of presently existing adopted issue are respondents Simon Bond Hichisson, Susan Pauline Hichisson and Sarah Hope Hichisson, the living issue of Mary Hope Balfour Hichisson, as well as, respondents Madeline Katherine Ives Davis and Nathaniel Davis, the adopted children of Charles Winthrop Davis, a grandson of the testator.

amended by St. 1958, c. 121, § 1, to eliminate the distinction between a child adopted by the testator and one adopted by others — in either case "child" was to include an adopted child absent a contrary intention. However, St. 1968, c. 121, § 2, limited the application of § 1 to instruments executed after the effective date of the amendment, August 26, 1958. Chapter 210, § 8, was again amended by St. 1969, c. 27, § 1, which is set out in the margin.[4] These statutes have been discussed extensively in *Boston Safe Deposit & Trust Co.* v. *Fleming,* 361 Mass. 172 (1972), *Billings* v. *Fowler,* 361 Mass. 230 (1972), *Boston Safe Deposit & Trust Co.* v. *Dean,* 361 Mass. 244 (1972), and *State Street Bank & Trust Co.* v. *D'Amario,* 368 Mass. 542 (1975).

It is not disputed that the 1958 amendment is inapplicable in the present case, for that amendment was to have prospective effect only, applying to instruments executed after August 26, 1958. *Boston Safe Deposit & Trust Co.* v. *Fleming, supra* at 178. *Perkins* v. *New England Trust Co.,* 344 Mass. 287, 294 (1962). In this case the will was executed in 1926, republished by a third and last codicil on July 10, 1929, and the testator died on December 26, 1929.

It is also clear that § 1 of the 1969 amendment does not help the petitioners, since the § 2 proviso to that amendment states that the § 1 rule should not apply to any grant or devise "which was executed or effective prior to . . . [August 26, 1958] with respect to any interests or right therein which had vested prior to the effective date of this act," i.e., September 1, 1969. In

___

[4] Statute 1969, c. 27, § 1, provides: "Section 8. The words 'child', 'grandchild', 'issue', 'heir' or 'heir-at-law', or their respective equivalents, in a grant, trust settlement . . . or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock, whether the adoption was decreed before or after the date of execution or the effective date of any such grant . . . unless the contrary plainly appears by the terms of the instrument."

deciding whether interests or rights had vested within the meaning of the § 2 proviso, our court concluded in *Billings, supra,* that the amendment "cannot fairly be viewed as adopting technical concepts whether an interest is vested or contingent." 361 Mass. at 240. It is sufficient if the interests or rights had "accrued . . . subject only to total or partial defeat by biological events." *Id.* at 241. Under the reasoning of *Billings,* each of the testator's four biological children in the present case acquired a vested interest in the remaining income on the testator's death in 1929 and the biological issue of the testator's biological children born prior to September 1, 1969, acquired a vested right at his or her birth. These interests could only be defeated by the birth of biological issue of Pauline, an impossibility in 1969 since Pauline was in her early eighties. In addition, the residuary interests of the testator's biological issue would be reduced, if not eliminated, by the inclusion of adopted issue. See *D'Amario, supra* at 549-550. Accordingly, the interests or rights of the testator's biological issue born prior to September 1, 1969, had vested in the sense of the 1969 proviso.

Turning to the question whether under the law as it existed prior to 1958 the testator's adopted issue should be considered "issue" under the will, it cannot be said that it plainly appears that the testator had an intention that adopted children be included as beneficiaries. Counsel for the "adopted issue" argues that since the testator in art. V specifically excluded his own adopted daughter, Elinor, and her issue,[5] it can be inferred that it was his intention to include adopted issue wherever not expressly excluded. This argument ignores the statutory language of G. L. c. 210, § 8, which excludes adopted children unless "it plainly appears to have been the intention of

---

[5] "Article V: I direct that in this and all succeeding Articles of my will the word 'child' or 'children' shall not include my said adopted daughter."

the . . . testator to include an adopted child." There is nothing to show that the testator contemplated that his daughter Pauline might adopt a child; in fact Pauline did not adopt Betty until almost seventeen years after his death. See *Hutchins* v. *Browne*, 253 Mass. 55, 58 (1925); *Wyeth* v. *Stone*, 144 Mass. 441, 444 (1887). The testator executed his will, apparently with assistance of counsel, and it would not be unreasonable to assume that the testator was familiar with the law governing adopted issue, which had been in effect since 1876, and that if he had wished to include adopted issue he would have done so in accordance with the law. See cl. 5 in n.2 *supra*.

In light of the foregoing, we answer the specific questions propounded to us by the report as follows: (1) the word "issue" as used in art. V of the testator's will does not include adopted issue and (2) the balance of the $10,000 annual income (i.e., $5,000) not payable pursuant to the exercise of the general testamentary power of appointment should be presently payable in accordance with art. V, 5 (1) and (2), as amended by the third codicil, until the expiration of the trust as provided for by art. V, 7.

The case is remanded to the Probate Court for further proceedings consistent with this opinion. Costs and expenses are to be in the discretion of the Probate Court.

*So ordered.*