MICHAEL B. ELEFANTE & others, trustees,[1] *vs.* MARK A.
NEWHALL & another.[2]

No. 95-P-1508.

Norfolk. December 6, 1996. - February 20, 1998.

Present: ARMSTRONG, KAPLAN, & LENK, JJ.

*Devise and Legacy*, Adopted child, Issue. *Trust*, Adopted child. *Words*,
"Child," "Issue."

General Laws c. 210, § 8, as amended by St. 1958, c. 121, § 1, abolishing the
"stranger to the adoption" rule, was applicable to a will executed in 1968,
and the word "issue" in a provision of the will was the equivalent of the
word "child" in the statute: accordingly, adopted grandchildren of the
testatrix were entitled to share equally with her biological grandchildren in
the income distribution to "issue" directed by the will. [301-305]

CIVIL ACTION commenced in the Norfolk Division of the
Probate and Family Court Department on June 10, 1994.

The case was considered by *Christina L. Harms*, J., on an as-
sented to motion for judgment on the pleadings.

*Laurie J. Hall* for Mark A. Newhall & another.

*Douglas E. Hausler* for Stephen Newhall.

ARMSTRONG, J. Alice J. Newhall, the testatrix, had three
children, one of whom, a son, Cheever Newhall, had three
biological children.[3] On April 1, 1968, she executed a will by
which, in Article Fourth, she devised her seventy-acre vacation
property in New Hampton, New Hampshire, in trust for the
benefit of those three grandchildren, designated by name. In
Article Fifth she gave her residuary estate in trust for the benefit

---

[1]Charles J. Kickham and George H. Kidder, trustees of the Alice J. Newhall
testamentary trust.

[2]Michael Newhall.

[3]The appellees: Cheever Newhall, Jr.; Gail Cross; and Stephen Newhall.
The appellants are their brothers by adoption, Mark Newhall and Michael New-
hall.

of her "issue," in language set out in the margin.[4] Cheever New-
hall married his third wife in 1971, and on November 30 of
that year he adopted her two sons, Mark and Michael, who
were then fifteen and seventeen years old, respectively. Alice
Newhall died in 1972.[5] After the death of Cheever (senior) in
1993, the trustees under the will of Alice J. Newhall sought
instructions whether the two adopted sons, Mark and Michael,
were to share the income distribution to "issue" under Article
Fifth. From a decree ruling that the adopted sons were not
entitled to share in the income distribution with Cheever's three
biological children, Mark and Michael appealed.

When Alice J. Newhall executed her will in 1968, the law
governing the rights of adopted children was G. L. c. 210, § 8,
as it had been amended by St. 1958, c. 121, § 1. Prior to the
1958 amendment, § 8 established a presumption that adopted
children of the testatrix were included in a devise or bequest to
" 'child[ren]' or [the] equivalent," but children adopted by one
other than the testatrix were not so included. Under that
"stranger to the adoption" principle, added in 1876,[6] Mark and
Michael, because they had been adopted by Cheever, not by Al-
ice, the testatrix, would be presumed not to be included in a

---

[4]"All the rest, residue and remainder of my estate, both real and personal
. . . I give, bequeath and devise . . . to my Trustees . . . to pay the net
income thereof . . . quarterly to or for the benefit of my issue living at the
date of payment by right of representation, until the expiration of twenty-one
years after the date of the last survivor of my issue living at my death and
thereupon to pay over and distribute the property to my issue then living by
right of representation."

[5]In March, 1969, Alice executed a codicil to her will which did not affect
the donative provisions of Article Fourth or Fifth and which, because it was
executed prior to the effective date of St. 1969, c. 27, has no bearing on the
issue in this case.

[6]General Laws c. 210, § 8, derived from St. 1876, c. 213, § 9, the text of
which, as modified immaterially by successive recodifications, read as follows
before the 1958 amendment:

> "The word 'child', or its equivalent, in a grant, trust settlement, entail,
> devise or bequest shall include a child adopted by the settlor, grantor or
> testator, unless the contrary plainly appears by the terms of the instru-
> ment; but if the settlor, grantor or testator is not himself the adopting
> parent, the child by adoption shall not have, under such instrument, the
> rights of a child born in lawful wedlock to the adopting parent, unless it
> plainly appears to have been the intention of the settlor, grantor or
> testator to include an adopted child."

bequest by Alice to Cheever's "children," by that term or any equivalent. *New England Merchs. Natl. Bank* v. *Groswold,* 387 Mass. 822, 824 (1983).

The 1958 amendment abolished the stranger to the adoption rule, effective August 26, 1958. *Davis* v. *Hannam,* 369 Mass. 26, 29-30 (1975). Applicable (by § 2 of the 1958 statute) to wills executed after the statute's effective date, the 1958 act amended § 8 to read:

> "The word 'child,' or its equivalent, in a grant, trust, settlement, entail, devise or bequest shall include an adopted child to the same extent as if born to the adopting parent or parents in lawful wedlock unless the contrary plainly appears by the terms of the instrument."

Alice's will, because it was executed after the effective date of the 1958 statute, would be deemed to include the adopted children of her descendants, just as if they had been born in lawful wedlock, in any provision of her will using the general term "child" or its equivalent, unless the contrary plainly appeared.

It was, in our view, clear beyond reasonable dispute in 1968, when Alice executed her will, that the word "issue," used in Article Fifth, was the equivalent of the word "child," so as to carry the presumption established by the 1958 statute. The opening words of G. L. c. 210, § 8 — "The word 'child,' or its equivalent, in a . . . devise or bequest" — were left unamended by the 1958 statute and had, prior to its passage, been judicially construed to include the word "issue." In *Wyeth* v. *Stone,* 144 Mass. 441, 443-444 (1887), the court, construing those words, said:

> "We think the intention was to provide, that if, by a settlement, deed, or will, property is given by terms which embrace and include a child born in wedlock, and which, in their application to existing facts, have the same effect and mean the same thing as child or children, such as the terms 'issue,' 'descendant,' or 'heir at law,' the rules provided by this section shall apply in the construction of the instrument. Any other construction would give the statute a very narrow scope, and to a great extent defeat its purpose."

The same construction — that "issue" when used in application

to child or children, included adopted children — was followed in *Buckley* v. *Frasier*, 153 Mass. 525, 527-528 (1891). Two decisions by New York courts, called upon to determine whether the word "issue" included adopted children under Massachusetts law, treated the question as settled by G. L. c. 210, § 8, *Wyeth* v. *Stone*, and *Buckley* v. *Frasier* in favor of inclusion. *In re Vail's Estate*, 200 Misc. 1032, 1036 (N.Y. Surr. Ct. 1951). *In re Cheney's Estate*, 109 N.Y.S.2d 704, 706 (Sup. Ct. 1952).[7] All of these decisions, of course, because written before the 1958 amendment, treated "issue" as including adopted children only when they had been adopted by the testator or testatrix; but the point is that, when the word "issue" was used in a context that denoted the children of the testator or testatrix, the word "issue" was treated as equivalent to the word "child" so as to include adopted children in accordance with the 1876 statute.

Thus, when the 1958 statute amended G. L. c. 210, § 8, to abolish prospectively the stranger to the adoption rule, the subject of the sentence — "The word 'child,' or its equivalent, in a . . . devise or bequest" — left unchanged from the 1876 statute, must be read as having carried the same meaning as it carried in the 1876 statute, that is, as including the word "issue" when used in reference to the children of the testator or testatrix or (as amended in 1958) of the testator's or testatrix's lineal descendants. It cannot reasonably be contended that the Legislature in 1958, when it left those words unaltered, intended to narrow their judicially approved meaning, so as to exclude the word "issue" from the connotation of the words, " 'child,' or its equivalent." Thus, when Alice Newhall executed her will in 1968, as well as her codicil in February, 1969 (see note 4, *supra*), her gift to her "issue" in Article Fifth must be read as having included any adopted children of her son Cheever, as if they were Cheever's biological issue. Although Mark and Michael were not adopted until two years later, and thus, we assume, were not within Alice's comprehension when she executed the will, the word she used, "issue," would pick up

___

[7]Dicta to the same effect — i.e., treating the word "issue" as equivalent to "child" under G. L. c. 210, § 8 — appear in *Boston Safe Deposit & Trust Co.* v. *Fleming*, 361 Mass. 172, 178, appeal dismissed, 409 U.S. 813 (1972), and *Foley* v. *Evans*, 30 Mass. App. Ct. 509, 512-513 (1991). See *Boston Safe Deposit & Trust Co.* v. *Dean*, 361 Mass. 244, 247 (1972).

children later adopted by one of her children, exactly as it would pick up any later-born biological grandchildren.

By St. 1969, c. 27, § 1, effective (by § 3) on September 1, 1969, the Legislature undertook to broaden the rights of adopted children by making the 1958 abolition of the stranger to the adoption rule apply retroactively, except where interests or rights had vested prior to September 1, 1969.[8] In the course of doing so, the subject of the operative sentence, as worded in 1876 and 1958, was amplified to read: "The words 'child,' 'grandchild,' 'issue,' 'heir' or 'heir-at-law,' or their respective equivalents, in a . . . devise or bequest . . . ." This change of wording represented, in our view, a possibly inartful attempt to incorporate in the wording of § 8 the broad connotation that had consistently been given to the phrase, " 'child,' or its equivalent," since *Wyeth* v. *Stone* in 1887. The 1969 amendment has been so treated (i.e., as a clarifying amendment) in commentaries. See, e.g., Newhall, Settlement of Estates and Fiduciary Law in Massachusetts § 24.14, at 59-60 & n.81 (5th ed. 1997). In 1975 the Legislature thought the better of retroactivity and amended the 1969 statute so that the changed

---

[8]The 1969 Act rewrote G. L. c. 210, § 8, to read as follows:

> "The words 'child,' 'grandchild,' 'issue,' 'heir' or 'heir-at-law,' or their respective equivalents, in a grant, trust settlement, entail, devise or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock, whether the adoption was decreed before or after the date of execution or the effective date of any such grant, trust settlement, entail, devise or bequest, unless the contrary plainly appears by the terms of the instrument."

Section two of the 1969 Act purported to make the changed wording apply retroactively to interests and rights that had not yet vested by the effective date of the 1969 Act:

> "The provisions of section eight of chapter two hundred ten of the General Laws, as amended by section one of this act, shall be applicable to all grants, trust settlements, entails, devises or bequests whether the same were executed or effective before or after the effective date of this act provided that said provisions shall not apply to any such grant, trust settlement, entail, devise or bequest which was executed or effective prior to August twenty-six, nineteen hundred and fifty-eight with respect to any interests or right therein which had vested prior to the effective date of this act."

language of G. L. c. 210, § 8, only applied to instruments executed after the effective date of the 1969 statute.[9]

The 1969 statute and its partial repeal in 1975 would be of no concern to us — the 1975 statute limited the applicability of the 1969 amendment to instruments executed after September 1, 1969, and Alice's will and codicil were executed prior to that date — except for the fact that occasional decisions, noting the change in wording in 1969, have suggested, by way of dictum, that the 1969 amendment may have broadened (rather than merely clarified) the 1958 statute, with the implication that, prior to 1969, the word "issue," used in a will, did not include adopted children. Cheever's biological children rely particularly on such a statement in *Callan* v. *Winters*, 404 Mass. 198, 202 (1989), set out in the margin.[10] But the holding of that case, which was concerned with a bequest to "issue" in a will executed in February, 1958, before the 1958 statute abolished the "stranger to the adoption" rule, was that "the 1975 amendment barred the retroactive application of G. L. c. 210, § 8 [as amended in 1969], to an instrument executed before August 26, 1958 [the effective date of the 1958 statute], and that, accordingly, the four adopted children [of a grandnephew] are not entitled to share in the distribution of the trust." *Id.* at 203. Alice Newhall's will, in contrast, having been executed *after* August 26, 1958, must be read as having included adopted children when it used the word "issue," without regard to the "stranger to the adoption" rule. This result is in accord with

---

[9]The 1975 Act (St. 1975, c. 769, §§ 3 and 4) amended section two of the 1969 Act to read:

> "The provisions of section eight of chapter two hundred ten of the General Laws, as amended by section one of this act, shall be applicable only to grants, trust settlements, entails, devises or bequests, executed after the effective date of this act [i.e., the 1969 act]."

This amendment took effect as of the 1969 Act's effective date, September 1, 1969.

[10]The passage is:

> "In 1975, the Legislature amended St. 1969, c. 27, § 2, repealing its retroactive application and providing that the repeal 'shall take effect as of September first, nineteen hundred and sixty-nine.' "

St. 1975, c. 769, §§ 3 and 4. Additionally, the statute's provision that the word "issue" ordinarily shall include adopted children was limited in its application "to grants, trust settlements, entails, devises or bequests, executed after [September 1, 1969]."

*New England Merchs. Natl. Bank* v. *Groswold*, 387 Mass. at 827: "We think that the 1958 amendment, taken together with the amendments in 1969 and 1975, indicates the Legislature's intent to draw 1958 as a bright line for the application of G. L. c. 210, § 8."[11]

The judgment is reversed, and a new judgment is to be entered directing the trustees to treat Mark Newhall and Michael Newhall as Alice Newhall's issue in the administration of the trust under Article Fifth of her will.

*So ordered.*

---

[11]Our conclusion makes it unnecessary to consider the further point argued for the adopted sons, that if their right to be treated as issue arose from the 1969 statute, their interests as issue vested at Alice's death in 1972 and could not constitutionally be divested by the 1975 statute.