Pauline C. Watson & another,[1] trustees,[2] & others[3]
vs. Ruth W. Baker.

Essex. February 10, 2005. - June 20, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Trust*, Construction, Adopted child, Beneficiary. *Will*, Construction. *Devise and Legacy*, Adopted child, Issue. *Constitutional Law*, Equal protection of laws, State action. *Words*, "Issue," "Lawful issue."

In an appeal of an action brought in Probate and Family Court seeking a declaratory judgment regarding the plaintiff's inclusion as a beneficiary of certain trusts, this court concluded that the plaintiff, an adopted child, was not a beneficiary of the two trusts created pursuant to her great-grandmother's will for the benefit of the testator's granddaughters and their "lawful issue," where the statutory rule of construction at the time of the testator's 1936 death included as "issue" an adopted great-granddaughter only if it "plainly appear[ed]" to have been the intention of the testator to do so, G. L. (Ter. Ed.) c. 210, § 8, and where such intent was not plainly apparent in the circumstances of the case [491-495]; further, this court concluded that application of G. L. (Ter. Ed.) c. 210, § 8, to the circumstances of this case did not violate the rights of adoptees under the equal protection clause of the Fourteenth Amendment to the United States Constitution, where it was the action of the testator, and not of the Commonwealth, that deprived the plaintiff of her potential status as a beneficiary of the trusts [495-496].

Civil action commenced in the Essex Division of the Probate and Family Court Department on July 31, 2002.

A request to reserve decision and to report the case to the Appeals Court was allowed by *Mary Ann Sahagian*, J. The

[1]Boston Safe Deposit & Trust Company.

[2]Of the trusts under the will of Ella E. Williams.

[3]Judith B. Carpenter, temporary executrix of the estate of William T. Carpenter, Jr.; Pauline C. Watson; Peter Arnold, Jr.; Suzanne W. Crowley; and Stephen C. Arnold were named as "interested parties" in the original complaint, and they filed an answer in their capacities as trust beneficiaries seeking a declaration that Baker is not a beneficiary of the trusts. They have no economic interest in the portion of the trusts affected by this decision and have filed no further pleadings.

Supreme Judicial Court granted direct appellate review.

*Peter E. Ball* (*Alexander Klibaner & Thanda Fields Brassard* with him) for Pauline C. Watson & another.

*Eric F. Menoyo* for the defendant.

*Mark S. Furman,* for Judith B. Carpenter, was present but did not argue.

MARSHALL, C.J. We consider in this case whether Ruth W. Baker, an adopted child, is a beneficiary of two trusts created pursuant to her great-grandmother's will for the benefit of the testator's granddaughters and their "lawful issue." The statutory rule of construction at the time of the testator's 1936 death included as "issue" an adopted great-granddaughter only if "it plainly appears to have been the intention" of the testator to do so. G. L. (Ter. Ed.) c. 210, § 8. St. 1876, c. 213, § 9. Because the intent is not plainly apparent here, we conclude that Baker is not a beneficiary of the trusts. We also reject Baker's constitutional challenge to the statute at issue.

*Background.* We first recite the facts as found by a judge in the Probate and Family Court and agreed to by the parties, before turning to the procedural history of this case. On January 16, 1934, Ella E. Williams, a maternal great-grandmother of Baker, executed the will that is the subject of this litigation. Williams was represented by an attorney in the preparation and execution of the will. She executed a subsequent codicil on February 12, 1936, that deleted two cash legacies but otherwise ratified and confirmed her will. Williams's will was allowed by the Probate and Family Court on May 4, 1936, following her death on February 28, 1936.

The will established two trusts. The terms of the trusts provide that the income from the trusts was to be paid in equal shares to Williams's two granddaughters, Frances T. Carpenter (Baker's mother) (Carpenter) and Ruth Taylor Carver (Carver), until the first of them died. After the death of one granddaughter, the deceased granddaughter's share of the trust income was to be paid to her "lawful issue" then living by right of representation during the life of the surviving granddaughter, who would continue to receive her share of the income from the trusts.

After the surviving granddaughter died, the trusts were to terminate. Pursuant to the terms of one trust, one-half of the property in the trust was to be distributed to the "issue" of Carpenter by right of representation and the other half to the "lawful issue" of Carver by right of representation.[4] Pursuant to the terms of the other trust, one-half of the property in the trust was to be distributed to the "lawful issue" of Carpenter and the other half to the "lawful issue" of Carver, both by right of representation.[5]

Carpenter and her husband, William T. Carpenter, had two biological sons. The older, William (William Jr.), was born on December 8, 1929. The younger, Jere, was born on April 15, 1932, and died (without issue) on February 2, 1945. Baker, who was born on October 25, 1940, began living in the Carpenters' home in 1946, when she was five years old. The Carpenters

---

[4] In Article First of her will, Williams funded this trust with $50,000. Article First also provides, in pertinent part:

> "Upon the death of either of my said granddaughters, the one-half of the income from said trust payable to such one, shall then be paid over to her *lawful issue* then living by right of representation, until the death of my surviving granddaughter and upon the death of my surviving granddaughter, then the trust is to be determined and one-half of the trust estate with any accumulations thereof shall be forthwith distributed and paid over to the *issue* of my granddaughter, Frances T. Carpenter in equal shares, by right of representation, and the other one-half of the trust estate with any accumulations thereof shall be paid over to the *lawful issue* of my granddaughter, Ruth Taylor Carver, in equal shares, by right of representation, free and discharged of all trust" (emphases added).

[5] In Article Thirteenth of her will, Williams funded this trust with "[a]ll the rest, residue and remainder of [her] estate." Article Thirteenth also provides, in pertinent part:

> "Upon the death of either of my granddaughters one-half of the said net income of the trust estate is to be paid at least quarterly to the *lawful issue* of my deceased granddaughter during the life time of my granddaughter who survives, and upon the death of my surviving granddaughter, then said trust is to determine and the principal of the trust estate free and discharged of all trust is to be paid over and distributed in equal shares, one-half thereof to the *lawful issue* of my granddaughter Frances T. Carpenter by right of representation, and one-half to the *lawful issue* of my granddaughter Ruth Taylor Carver by right of representation" (emphases added).

adopted her when she was six years old. Frances Carpenter died on January 20, 1996, survived by William Jr.[6] and Baker. The income from the share of the trusts formerly paid to Carpenter was paid only to her son, William Jr., and not to Baker.

Williams's second granddaughter, Carver, died on August 10, 2001, survived by a daughter, Pauline C. Watson, a trustee of the trusts, and three grandchildren born to a second daughter who predeceased Carver, each of whom was named an interested party in this case. See note 3, *supra.* As a result of the deaths of Carpenter and Carver, the trustees must distribute the remaining property of the trusts in accordance with the trust terms. See notes 4, 5, *supra.*

Both before and after Carver's death, Baker, through counsel, notified the trustees of her belief that she is a beneficiary of the trusts. Accordingly, in July, 2002, before making a final distribution of the trust assets pursuant to G. L. c. 231A, §§ 1 and 2, the trustees[7] filed a complaint in the Probate and Family Court for Essex County, which had probated Williams's will and continued to oversee the administration of the trusts. The complaint sought declaratory judgment pursuant to G. L. c. 215, § 6, that Baker is not a beneficiary of the trusts because she is adopted.[8] Baker filed an answer in September, 2002, asserting that Williams's repeated use of the word "lawful" before "issue" in the will requires Baker's inclusion as a beneficiary. She

---

[6]William T. Carpenter, Jr., was originally named as a plaintiff-trustee of the trusts, and as an interested party in his capacity as a trust beneficiary. However, he died on March 19, 2004, and was withdrawn as a plaintiff. On May 25, 2004, a judge in the Probate and Family Court allowed a motion substituting his widow, Judith B. Carpenter, temporary executrix of his estate, as an interested party. See note 3, *supra.*

[7]Boston Safe Deposit & Trust Company; William T. Carpenter, Jr.; and Pauline C. Watson. See note 6, *supra.*

[8]The version of G. L. c. 210, § 8, applicable at Williams's death provided in pertinent part:

"The word 'child', or its equivalent, in a grant, trust settlement, entail, devise or bequest shall include a child adopted by the settlor, grantor or testator, unless the contrary plainly appears by the terms of the instrument; but if the settlor, grantor or testator is not himself the adopting parent, the child by adoption shall not have, under such instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the settlor, grantor or testator to include an adopted child."

also challenged the constitutionality of the applicable statutory rule of construction, asserting that it violates the equal protection rights of adopted children. In November, 2002, the trustees moved for judgment on the pleadings. William Jr., in his role as an interested party, filed an answer in April, 2003, also seeking a declaration that Baker is not a beneficiary. In March, 2004, after conducting limited discovery, Baker filed a request for a hearing and filed a cross motion for summary judgment. In her motion for summary judgment, which the interested parties opposed, Baker sought a declaration that she is a beneficiary of the trusts and entitled to receive one-half of the remainder of the trusts allocated to her mother's lawful issue, and one-half of the net income of the trusts allocated to her mother's lawful issue that accrued after her mother's death.

In May, 2004, after the briefing of the cross motions was completed, Baker requested that the Probate and Family Court reserve decision and report the case to the Appeals Court, see G. L. c. 215, § 13, and Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), which a Probate and Family Court judge allowed. She also issued findings of fact that were agreed on by the trustees, Baker, and Judith Carpenter. We granted Baker's application for direct appellate review.

*Discussion.* We first address Baker's contention that her great-grandmother's will, properly construed, includes her as a beneficiary of the trusts because she is "lawful issue" of Frances Carpenter. "It is fundamental that a trust instrument must be construed to give effect to the intention of the donor as ascertained from the language of the whole instrument considered in the light of circumstances known to the donor at the time of its execution." *Powers* v. *Wilkinson*, 399 Mass. 650, 653 (1987), quoting *Groden* v. *Kelley*, 382 Mass. 333, 335 (1981). "When a will is drafted by a person familiar with the accurate use of legal terms, it is presumed that the legal terms were used correctly and with the intent that they be interpreted in conformity with the law." *Boston Safe Deposit & Trust Co.* v. *Wilbur*, 431 Mass. 429, 436 (2000).

The version of G. L. c. 210, § 8, that existed at Williams's death was enacted in 1876. St. 1876, c. 213, § 9. See note 8, *supra*. It was likely that the Legislature passed the statute as a

consequence of this court's decision in *Sewall* v. *Roberts*, 115 Mass. 262 (1874), which construed a predecessor statute to provide that a child adopted in 1865 by the settlor of an irrevocable trust established in 1825 took as a child or issue of the settlor. See *Wyeth* v. *Stone*, 144 Mass. 441, 442-444 (1887) (describing circumstances leading to enactment of 1876 statute). The 1876 statute established a rule of construction that resolved whether the word "child" or its equivalent when used in a will or other specified instruments included an adopted child. The rule included children adopted by the testator, and excluded children not adopted by the testator, unless it "plainly appears" that the testator had a contrary intent. The matter was settled until 1958, when the Legislature reversed the rule's presumption to reflect changing societal attitudes toward adopted children. See St. 1958, c. 121, § 1. Ever since, the term "child" or its equivalent in a testator's will has included an adopted child, absent a clearly stated contrary intent, regardless of who adopted the child.[9]

"General Laws c. 210, § 8 (and its predecessors), as it (and they) read before the 1958 amendment, was applied with uniformity to prevent a child, adopted by someone not the testator or settlor, from taking as 'issue' an interest under a trust

---

[9]General Laws c. 210, § 8, which was rewritten by St. 1969, c. 27, § 1, now provides:

"The words 'child', 'grandchild', 'issue', 'heir' or 'heir-at-law,' or their respective equivalents, in a grant, trust settlement, entail, devise or bequest, shall include one who is adopted to the same extent as if born to the adopting parent or parents in lawful wedlock, whether the adoption was decreed before or after the date of execution or the effective date of any such grant, trust settlement, entail, devise or bequest, unless the contrary plainly appears by the terms of the instrument."

The changing treatment of adopted children pursuant to G. L. c. 210, § 8, is consistent with changes in the majority rule as reflected in the Restatements of the Law. Compare G. L. (Ter. Ed.) c. 210, § 8, with Restatement of Property § 287 comment f, at 1524 (1940); and G. L. c. 210, § 8, as appearing in St. 1958, c. 121, § 1, with Restatement (Second) of Property: Donative Transfers § 25.4 (1988); and G. L. c. 210, § 8, as appearing in St. 1969, c 27, § 1, with Restatement (Third) of Property: Wills and Other Donative Transfers § 14.5 (Tent. Draft No. 4, 2004). Nothing in this opinion should be construed as conflicting with the Legislature's clear determination that adopted children are to be treated in all respects the same as children born to their parents. See G. L. c. 210, § 6.

instrument." *Boston Safe Deposit & Trust Co.* v. *Fleming*, 361 Mass. 172, 178, appeal dismissed, 409 U.S. 813 (1972), and cases cited. We have held that "we would follow the earlier cases" despite "the enactment of the 1958 amendment, with respect to instruments executed before the effective date of the amendment." *Id.* See *New England Merchants Nat'l Bank* v. *Groswold*, 387 Mass. 822, 827 (1983) ("the law in effect at the time of the testator's death is the applicable law"). Baker challenges the continuing constitutionality of these rulings, a contention we address below. Baker also argues that the use by Williams of the phrase "lawful issue" in place of the single word "issue" manifests Williams's intent to include adoptees as beneficiaries, and thereby distinguishes this case from those in which this court has prevented "a child, adopted by someone not the testator or settlor, from taking as 'issue' an interest under a trust instrument." *Boston Safe Deposit & Trust Co.* v. *Fleming, supra.* We disagree. "Merely being able to raise a rational inference on the basis of textual interpretation is not sufficient to meet the 'plainly appears' standard of G. L. [Ter. Ed.] c. 210, § 8." *Foley* v. *Evans*, 30 Mass. App. Ct. 509, 514 (1991).

It does not plainly appear from the language of Williams's will and codicil, "considered in the light of circumstances known to [Williams] at the time of its execution," *Powers* v. *Wilkinson, supra* at 653, that she intended to include any adopted issue of her granddaughters in the class of beneficiaries created by the trusts. Williams had no adopted issue when she executed her will or the codicil, or at the time of her death. Furthermore, she could not have intended specifically to include Baker because Baker had not yet been born, let alone adopted, when Williams died. See *Davis* v. *Hannam*, 369 Mass. 26, 31-32 (1975); *Hutchins* v. *Browne*, 253 Mass. 55, 58-59 (1925); Restatement of Property § 287(2)(b) & comments d, g, and h, at 1522-1527 (1940).

It is unclear precisely what Williams intended by using the phrase "lawful issue" rather than the single word "issue" in the trust instrument. Of particular concern here is that Williams used "issue" once in the provisions for one of the trusts even though she used "lawful issue" in all other relevant provisions

of both trusts. Compare note 4, *supra*, with note 5, *supra*. We disagree with Baker's assertion that this was nothing more than a drafting error. The terms "issue" and "lawful issue" appear throughout the will and it is equally, if not more, likely that Williams used the terms "issue" and "lawful issue" interchangeably.

Even if Williams did intend "lawful issue" to mean something different from "issue," her use of the adjective "lawful"[10] was unnecessary if Williams meant thereby to exclude nonmarital children, because it was well settled that "issue" did not include children born outside of marriage. See *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 634 (1947), overruled by *Powers* v. *Wilkinson*, *supra* at 661-662 ("by the common law of a few generations ago such words as issue, . . . in the absence of anything indicating a contrary intent, meant only persons of the class who were born in lawful wedlock").[11] We agree with Baker insofar as Williams *may* have used the adjective in an effort to include individuals who became issue by legal processes, including children born into a marriage, or acknowledged nonmarital children, or nonmarital children whose parents later married, or even adopted children.[12] See *Parker* v. *Parker*, 131 S.W.3d 524, 535 (Tex. Ct. App. 2004); *Penland* v. *Agnich*, 940 S.W.2d 324, 327 (Tex. Ct. App. 1997). In the complete absence of other evidence probative of Williams's feelings toward adoptees, "[s]uch a plausible interpretive analysis," however, does not "yield the sort of obvious and unequivocal manifestation" of Williams's intent necessary to overcome the presumption that

---

[10]The parties agree that the word "lawful" means "[n]ot contrary to law; permitted by law." Black's Law Dictionary 892 (7th ed. 1999).

[11]In trust instruments executed after the date of our decision in *Powers* v. *Wilkinson*, 399 Mass. 650 (1987), "the word 'issue,' absent clear expressions of a contrary intent, must be construed to include all biological descendants," including nonmarital children. *Id.* at 662-663.

[12]We doubt, however, that a class whose membership is defined by law can be *expanded* by the addition of a qualifier, particularly the adjective "lawful." The addition of a modifier typically narrows a more general class, e.g., "adopted children" is a subclass of "children." Accordingly, we reject Baker's contention that "lawful issue" is not an equivalent of "child," pursuant to G. L. (Ter. Ed.) c. 210, § 8, and that the rule of construction therefore does not apply to Williams's will. See *Wyeth* v. *Stone*, 144 Mass. 441, 444 (1887) ("issue" is equivalent of "child" for purposes of determining applicability of St. 1876, c. 213, § 9).

adopted great-grandchildren are excluded from the class of "lawful issue." *Foley* v. *Evans, supra* at 514. See G. L. (Ter. Ed.) c. 210, § 8. Contrast *Penland* v. *Agnich, supra* (fact that testator bequeathed majority of estate to family members not related to him by blood disclosed his intent that "lawful issue" include adoptees).

Williams executed her will "with assistance of counsel, and it would not be unreasonable to assume that the testator was familiar with the law governing adopted issue, which had been in effect since 1876, and that if [Williams] had wished to include adopted issue [she] would have done so in accordance with the law." *Davis* v. *Hannam, supra* at 32.

We turn now to Baker's contention that application of G. L. (Ter. Ed.) c. 210, § 8, in the circumstances of this case, violates the equal protection rights of adoptees. "The guarantees of the equal protection clause of the Fourteenth Amendment are directed solely to limiting the actions of government." *Powers* v. *Wilkinson, supra* at 654. In *Powers* v. *Wilkinson, supra,* we held that "State action is not involved, nor is the equal protection clause of the Fourteenth Amendment [to the United States Constitution] implicated, when courts apply rules of construction to wills or trust instruments." *Id.* at 656. Although the rule of construction we considered in that case was created judicially, the same logic applies to rules of construction created by the Legislature, including G. L. (Ter. Ed.) c. 210, § 8. When words are "used in a legal instrument, with or without explication, it is the donors and testators who act, not this court nor any other arm of the State." *Id.* at 655. Because application of G. L. (Ter. Ed.) c. 210, § 8, involves no State action, and does not bar an adopted person from taking under the terms of a will or trust, there can be no equal protection violation. Contrast *Trimble* v. *Gordon,* 430 U.S. 762, 775 n.16 (1977) (finding State action in statute barring nonmarital child from inheriting from intestate father, because "intestate succession laws are acts of States, not of individuals").

Here, Williams was free to express her intent using any words she wished. Had Williams intended to benefit adopted great-grandchildren, she could have done so by choosing words that would not have invoked the rule of construction here at issue.

She could have refrained from using words "whose meaning . . . would remain ambiguous" without resort to the rule of construction. *Powers* v. *Wilkinson, supra.* Instead, Williams chose to use a word, "issue," whose meaning is supplied by G. L. (Ter. Ed.) c. 210, § 8, as discussed above, despite the presumption that she knew the effect of the rule of construction. Accordingly, it was Williams, and not the State, who deprived Baker of her potential status as a beneficiary of the trusts.

*Conclusion.* For the above reasons, we remand the case to the Probate and Family Court for entry of a judgment declaring that Ruth W. Baker is not a beneficiary of the trusts. Accordingly, she is entitled neither to share in the distribution of the trust assets nor to any of the income of the trusts that was distributed to William T. Carpenter, Jr., following the death of Frances T. Carpenter.

*So ordered.*