ANTHONY WELLER *vs.* ANN TAGGE & another.[1]

No. 05-P-497.

Norfolk. February 13, 2006. - September 28, 2006.

Present: PERRETTA, KAFKER, & GREEN, JJ.

*Trust,* Distribution, Construction. *Devise and Legacy,* Child born out of wedlock, Issue. *Words,* "Issue."

This court construed the term "issue" as it appeared in a will executed in 1955 to exclude nonmarital children of the testator's grandnephews and grandnieces, where there was no clear expression of a contrary intention on the part of the testator. [449-453]

CIVIL ACTION commenced in the Superior Court Department on March 13, 2003.

After transfer to the Norfolk Division of the Probate and Family Court Department, the case was heard by *Robert W. Langlois,* J., on a motion for summary judgment.

*Jacqueline Y. Parker (Michelle S. LaBrecque* with her) for the defendants.

*Alvin S. Nathanson* for the plaintiff.

PERRETTA, J. By this action, originally brought in the Superior Court but then transferred to the Probate and Family Court, Anthony Weller (Anthony) sought a declaration as to "whether he is an eligible distributee under a trust known as the Trust under the Will of Helena C.M. Willis," established for the benefit of, among others, certain grandnephews and grandnieces of Helena C.M. Willis (Helena), and providing for the eventual distribution of the assets of that trust to their "issue." Anthony is a nonmarital child of one such grandnephew, and Ann Tagge (Ann) is the marital child of the same grandnephew. On

---

[1]Fleet Bank, as trustee of the trust under the will of Helena C.M. Willis. Although an active participant in the proceedings in the trial court, the trustee took no part in this appeal.

Anthony's motion for summary judgment, the judge ruled that the term "issue" used by Helena in her will includes children born out of wedlock. A judgment entered declaring that Anthony was to be treated as an "eligible distributee under said trust, whose rights thereunder shall be identical to those of Ann Tagge." Ann appeals and argues that the term "issue" used by Helena in her 1955 will must be construed to exclude nonmarital children absent a "clear expression" of a contrary intention, which does not appear in Helena's will. We reverse the judgment.

1. *The relevant undisputed facts.* Helena, then eighty-six years of age, executed her will on March 1, 1955.[2] The trust was established under Article VIII(2) of the will. As set out in that provision, $10,000 from the income of the trust was to be paid annually to each of her niece, Matilda B. Weller, and nephew, Donald E. Wilbur, during their lives. The balance of the income was to be divided into five equal parts: one part to be paid to Helena's niece, Teresa McAleer Finn, during her life if she was living at the time of Helena's death,[3] and four parts to be paid to the "legal children" of four other named nieces and nephews living at the time of her death: Matilda B. Weller, Leo F. McAleer, Charles L. McAleer, and John A. McAleer. Upon the death of any of Helena's grandnephews and grand-nieces, "two-thirds of the trust principal of which he or she received the income [was to] be paid in equal shares to his or her issue, per stirpes and not per capita." The will contains no definition of the word "issue."

Helena died in 1960. She was survived by her niece Matilda Weller and Matilda's two "legal children," Paul Weller and George A. Weller (George), both of whom were income beneficiaries under Helena's will. George was a foreign correspondent who spent significant periods of time living and working outside the United States. He married Katherine Deupree Weller in Naples, Italy, on July 29, 1932. Two children were born during their marriage: Ann, who was born in Naples

---

[2]Helena executed a codicil on March 30, 1955, which did not affect the provisions of the will at issue.

[3]Teresa McAleer Finn predeceased Helena in 1959.

on July 30, 1932, and Susan, who was born in the United States in October, 1943.

Based on the materials put before him on Anthony's motion for summary judgment, the judge ruled that Susan was not George's biological child, a fact that neither party appears to dispute.[4] George and Katherine were divorced in Nevada in 1944. Four years later, George married his second wife, Charlotte Ebener Weller. No children were born of that marriage.

On September 18, 1957, Gladys Lasky Weller gave birth to Anthony Weller in Macon, Georgia. It is undisputed that George and Gladys were never married. Gladys, a British citizen, apparently adopted the name of Weller pursuant to a Deed Poll from the British government.[5] George Weller died in Rome, Italy, in 2002.

In deciding Anthony's motion for summary judgment, the judge ruled that the language of Helena's will was unambiguous and that the term "issue" as used in Article VIII(2)(c) of the will included children born out of wedlock. The judge's determination was based on his reasoning that the language of the will explicitly restricted Helena's gift to her grandnephews and grandnieces to marital children by her modification of "children" with the word "legal." The judge also reasoned that it could be inferred from the absence of the term "legal" in the provision immediately following that restriction that the term "issue" was intended to include all children, even those born out of wedlock.

On appeal, Ann argues that the term "issue" used in a 1955

---

[4]Susan predeceased George in 1996. Her estate is not a party to this action. In support of his motion for summary judgment, Anthony submitted what he purports to be the affidavit of George in which he, George, states that Susan was not his biological child and acknowledges Anthony as his son. While disputing the authenticity of the affidavit, Ann does not appear to question that Susan was not George's biological child. She did, however, dispute Anthony's contention that Susan was not George's "issue" under Helena's will.

[5]We could find nothing in the record to support the judge's statement in his memorandum of decision that the parties agreed that George had a son, Anthony, "born out of wedlock." Ann disputes that Anthony is George Weller's child, and argues that she "deferred" that dispute in order to obtain a ruling on whether an illegitimate child can take under Helena's will and trust as matter of law. The record supports her position.

will must be construed to exclude nonmarital children absent a "clear expression" of a contrary intent. She argues that because no such clear expression appears in Helena's will, Anthony is not entitled to share in any distribution of the assets of the trust created by her will.

2. *Discussion.* At common law followed in Massachusetts until 1987, the word "issue" used in a will was presumed to *exclude* nonmarital children. See *Hayden* v. *Barrett*, 172 Mass. 472, 474 (1899); *Old Colony Trust Co.* v. *Attorney Gen. of the U.S.*, 326 Mass. 532, 533 (1950); *Powers* v. *Wilkinson*, 399 Mass. 650, 661-662 (1987) (overruling *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 634-636 [1947]); *Watson* v. *Baker*, 444 Mass. 487, 494 (2005). The traditional rule of construction was overruled in *Powers* v. *Wilkinson*, 399 Mass. at 662, where the Supreme Judicial Court held that "the word 'issue,' absent clear expressions of a contrary intent, must be construed to *include* all biological descendants" (emphasis added). The court stated that the new rule of construction would apply only prospectively to instruments executed after the date of its opinion, that is, April 16, 1987. *Id.* at 662-663.

Although the parties do not dispute that when Helena executed her will in 1955, the word "issue" presumptively meant only those "issue" born into wedlock, they do dispute what must be shown to overcome the legal presumption of exclusion and whether Anthony satisfied that requirement. Those are the issues before us.

Anthony relies on the phraseology used by the court in 1947 in *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. at 634. There the court, in its discussion of the traditional rule of construction that children born out of wedlock were presumptively excluded from taking under a will as "issue," stated:

> "It cannot be doubted that by the common law of a few generations ago such words as issue, children, descendants, and so forth as descriptive of a class in a grant, devise, or legacy, *in the absence of anything indicating a contrary intent*, meant only persons of the class who were born in lawful wedlock" (emphasis added).

He reads that statement as an adoption by the court of a less

stringent standard for the showing of the intent required to overcome the meaning presumptively ascribed to the term "issue." Based upon that reading, he argues that the term "issue" is to be construed to exclude nonmarital children only "in the absence of anything indicating a contrary intent."

We do not read *Fiduciary Trust Co.* v. *Mishou, supra,* as Anthony does. First, the court in *Mishou* did not announce that it was adopting a new rule of construction. Second, the shift in the law that is posited by Anthony as implicit in *Mishou* does not take into account the fact that evidence of a testator's contrary intent was not there at issue. *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. at 636 ("Nothing appears in [the] . . . will or in the circumstances of the case to indicate that [the testatrix] did not use the word 'issue' in the sense attributed to it by established legal usage"). To the contrary, the principal thrust of *Mishou* was to reaffirm adherence to the traditional rule of construction. See *ibid.; Powers* v. *Wilkinson,* 399 Mass. at 655.

Although appellate decisions have quoted the *Mishou* formulation of the traditional rule of construction, see *Powers* v. *Wilkinson,* 399 Mass. at 654; *C.C.* v. *A.B.,* 406 Mass. 679, 683-684 (1990); *Watson* v. *Baker,* 444 Mass. at 494, none has decided the precise question of the showing required to overcome the traditional presumptive construction of the word "issue" or determined the sufficiency of evidence probative of a testator's contrary intent on facts similar to those before us or are otherwise inconsistent with our conclusion. See generally *Powers* v. *Wilkinson,* 399 Mass. at 654 (construing the word "issue" used in a trust to exclude nonmarital children where "nothing indicate[d] an intent by the donor to include nonmarital issue"); *C.C.* v. *A.B.,* 406 Mass at 683-684 (refering to traditional rule of construction in context of general discussion of historic legal status of nonmarital children); *Watson* v. *Baker,* 444 Mass. at 493-494 (considering whether evidence of testatrix's intent to include adopted issue was sufficiently plain to overcome statutory presumption under former version of G. L. c. 210, § 8, against inclusion of a person not adopted by the testator).

In interpreting the language used by Helena, we are guided by the well-established principle that "a trust instrument must

be construed to give effect to the intention of the donor as ascertained from the language of the whole instrument considered in the light of circumstances known to the donor at the time of its execution." *Powers* v. *Wilkinson*, 399 Mass. at 653, quoting from *Groden* v. *Kelley*, 382 Mass. 333, 335 (1981). Application of that tenet leads us to conclude that Helena did not express a clear intention to include nonmarital children within the term "issue" under Article VIII(2) of her will.

The record establishes that Anthony was born two years after the date of Helena's will and codicil. Anthony points to nothing, nor could we find anything, in the record to show that Helena was aware of his birth prior to her death and specifically intended to include him in her will. Cf. *Davis* v. *Hannam*, 369 Mass. 26, 32 (1975).

Anthony first contends that even if Helena was unaware of his existence, she was surely aware of Susan's birth and the fact that she was not George Weller's biological child. Based upon that allegation, which is unsupported by any evidence, Anthony argues that by using the word "issue," Helena intended to exclude those not of her bloodline, i.e., Susan, and to include persons related by blood, including nonmarital children such as himself. This argument fails for the reason that it is based upon conjecture and not evidence.

Next, Anthony argues that the language of Helena's will manifests her intent to recognize nonmarital children as issue. As earlier recited, Helena used the words "legal children" in her will in describing the class of income beneficiaries, i.e., her grandnephews and grandnieces, under the trust but then provided that upon their deaths, "two-thirds of the trust principal of which he or she received the income [was to] be paid in equal shares to his or her issue, per stirpes and not per capita." Relying on Helena's use of the words "legal children" in one instance and her use of the word "issue" in a subsequent provision, Anthony argues that Helena specifically excluded nonmarital children from the class of income beneficiaries while including nonmarital children, that is, "issue," in the eventual distribution of the assets of the trust. This argument has been rejected in cases involving the interpretation of wills governed by a rule of statutory construction, similar to the rule applicable

to Helena's will of 1955, that is, that the word "issue" as used in a will was presumed to exclude nonmarital children.

Under a former version of G. L. c. 210, § 8, the word "child" or its equivalent used in a will or trust excluded adopted children where the settlor or testator was not the adopting parent unless it "plainly appear[ed]" to have been his intent to include an adopted child.[6] In *Davis* v. *Hannam*, 369 Mass. at 31-32, a granddaughter adopted almost seventeen years after the testator's death argued that the testator's specific exclusion of his own adopted daughter and her issue in his 1926 will was indication of an intent to include other adopted issue wherever they were not expressly excluded. The court rejected that argument as insufficient to show the sort of clear manifestation necessary to warrant a conclusion that the testator had used the word "issue" in a manner inconsistent with its commonly accepted legal definition. *Ibid.* See *Foley* v. *Evans*, 30 Mass. App. Ct. 509, 514 (1991) (ability to raise rational inference on the basis of textual interpretation insufficient to meet "plainly appears" standard of the pre-1958 version of G. L. c. 210, § 8).

In short, when Helena executed her will in 1955, the word "issue" did not include nonmarital children. It is more than reasonable to infer from her testamentary documents that they were drafted with the assistance of counsel, rendering it equally if not more likely that the term was used in accordance with its usual meaning, see *Boston Safe Deposit & Trust Co.* v. *Wilbur*, 431 Mass. 429, 436 (2000), and that had she wanted to include nonmarital children in the distribution of trust assets, she would

---

[6]As inserted by St. 1876, c. 213, § 9, G. L. c. 210, § 8, provided:

"The word 'child,' or its equivalent, in a grant, trust settlement, entail, devise or bequest shall include a child adopted by the settlor, grantor or testator, unless the contrary plainly appears by the terms of the instrument; but if the settlor, grantor or testator is not himself the adopting parent, the child by adoption shall not have, under such instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the settlor, grantor or testator to include an adopted child."

This statutory rule of construction was reversed by St. 1958, c. 121, § 1. See *Watson* v. *Baker*, 444 Mass. at 492, where the court held that "[e]ver since" the 1958 amendment, "the term 'child' or its equivalent in a testator's will has included an adopted child, absent a clearly stated contrary intent, regardless of who adopted the child."

have done so in a more clear manner consistent with the then controlling law.[7] See *Davis* v. *Hannam*, 369 Mass. at 31-32; *Watson* v. *Baker*, 444 Mass. at 495-496.

3. *Conclusion.* For the above-discussed reasons, the judgment is reversed and the case is remanded to the Probate and Family Court for entry of a judgment declaring that Anthony Weller is not an eligible distributee under the trust under the will of Helena C.M. Willis.

*So ordered.*

---

[7] Our conclusion makes it unnecessary to consider Ann's additional arguments, as we understand them, all to the effect that the judge's rulings and decision were motivated by a personal bias in favor of nonmarital children.